CONSMILLER *v.* UNITED STATES (No. 683).[1]

MARBLE MANTELS—WHEN NOT SCULPTURES.

A sculpture must be the work of a sculptor and such a production as to be stamped with some of the individuality of the artist himself. The burden of showing the importation here to be sculptures was on the importer, and the evidence goes to prove the maker was not a sculptor proper, but an ornamentalist, rather, with a specialty in the decoration of stonework. The merchandise is dutiable under paragraph 112, tariff act of 1909.

United States Court of Customs Appeals, May 27, 1912.

APPEAL from Board of United States General Appraisers, Abstract 25578 (T. D. 31589).

[Affirmed.]

*Brooks & Brooks (Frederick W. Brooks, jr.,* of counsel) for appellant.

*William L. Wemple,* Assistant Attorney General (*Leland N. Wood,* assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

This case involves the tariff classification of marble mantel pieces which were imported at the port of New York and assessed for duty by the collector of customs as manufactures of marble under the provisions of paragraph 112 of the tariff act of 1909, which said paragraph reads as follows:

112. Marble, breccia, onyx, alabaster, and jet, wholly or partly manufactured into monuments, benches, vases, and other articles, or of which these substances or either of them is the component material of chief value, and all articles composed wholly or in chief value of agate, rock crystal, or other semiprecious stones, except such as are cut into shapes and forms fitting them expressly for use in the construction of jewelry, not specially provided for in this section, fifty per centum ad valorem.

The importer protested that the mantels were improperly classified, and as grounds for his protest alleged, first, that the goods were works or objects of art exempt from duty under paragraph 717 of the free list, and, second, that if not exempt the merchandise was dutiable as sculptures at 15 per cent ad valorem under the provisions of paragraph 470.

---

The parts of paragraphs 717 and 470 material to the case are as follows:

*Free list.*

\*     \*     \*     \*     \*     \*     \*

The articles mentioned in the following paragraphs shall, when imported into the United States, \* \* \* be exempt from duty:

\*     \*     \*     \*     \*     \*     \*

717. Works of art, including \* \* \* sculptures, which are proved to the satisfaction of the Secretary of the Treasury under rules prescribed by him to have been in existence more than twenty years prior to the date of their importation, but the term "sculptures" as herein used shall be understood to include professional productions of sculptors only, whether round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal \* \* \*. Other works of art \* \* \* works in bronze, marble, terra cotta, parian, pottery, or porcelain, artistic antiquities, and objects of art of ornamental character or educational value which shall have been produced more than one hundred years prior to the date of importation, but the free importation of such objects shall be subject to such regulations as to proof of antiquity as the Secretary of the Treasury may prescribe.

470. Paintings in oil \* \* \* and sculptures, not specially provided for in this section, fifteen per centum ad valorem; but the term "sculptures" as used in this act shall be understood to include only such as are cut, carved, or otherwise wrought by hand from a solid block or mass of marble, stone, or alabaster, or from metal, and as are the professional production of a sculptor only \* \* \*.

The Board of General Appraisers overruled the protest and the importers appealed.

On the hearing no attempt was made to show that the merchandise was exempt from duty under the provisions of paragraph 717, and it would seem that that particular claim of the importers had been abandoned. At all events the record is such that we think we are not called upon to consider that feature of the case, and our attention will be confined to the one remaining issue tendered by the protest, namely, Are the mantels sculptures within the meaning of the provisions of paragraph 470? The importer had the affirmative of that proposition, and it was incumbent upon him to establish by a preponderance of credible evidence that the mantels were sculptures, cut, carved, or otherwise wrought by hand, and the professional production of a sculptor only.

In that behalf the testimony of Ernest Plançon, foreman of the shops which produced the goods, was offered by the importer. This witness stated that he was a sculptor and marble mason and that he had followed that profession since he was first apprenticed to the trade in 1885. He said that he had served his apprenticeship as a sculptor in the shops of Mr. Jean Joseph Rousseau, at Antwerp, with whom he remained for nine years and from whom he acquired his knowledge of ornamental sculpture. Subsequent to his service with Mr. Rousseau, Mr. Plançon worked for two years as an ornamental sculptor at Brussels and finally became the foreman of the workshops in which the mantels under consideration were made. During the period of his apprenticeship Mr. Plançon attended the morning and evening

classes at the Royal Academy of Fine Arts, but he never took any diploma or degree conferred by any institution having for its purpose the instruction of students in art and sculpture. He admitted that no object of sculpture produced by him had ever been displayed in any art gallery or public institution, and, so far as the record discloses, he never at any time executed an original work of sculptural art, unless a monument designed by him for the market place at Wattignies, France, can be so considered. That monument was worked out in granite, a stone not usually selected for the sculptor's chisel, and whether sculpture was a feature of it or whether it depended upon its proportions to impress does not appear. Giving due weight to all that Mr. Plançon said of himself, it is difficult to avoid the conclusion that he is a highly skilled artisan rather than a capable artist and that his occupation is not a profession but a trade which was largely acquired as an apprentice in a shop and not as a student in a studio. His own description of his calling and his record of accomplishment does not warrant his recognition as a professional sculptor, but rather establishes him as an ornamentalist whose specialty is the decoration of stone-work. Though sculptor and decorator may both work. in stone, between them there is a very wide gulf and the domain of the one is seldom, if ever, invaded by the other. Ordinarily the ornamentalist in stone imitates that which he actually sees and his work goes no farther than to please the eye. The sculptor, on the other hand, reproduces that which is pictured by his imagination and his production appeals not only to the eye, but to the emotions as well. In fine, one copies and the other, in a sense, creates and originates.

Mr. Plançon's testimony may not have done him full justice, but in our opinion it fell considerably short of showing that he was a professional sculptor. But even if he were a professional sculptor, the mantels themselves and the method and manner of their production do not justify us in holding that they are sculptures. It does not appear that any of the mantels or any part of them is the original creation of a sculptor. Indeed, it appears affirmatively that they are executed by a purely commercial firm and that most of them are made from stock models. That a copy of a sculpture may itself rank as a sculpture it must be something more than a mere facsimile reproduction of the original. To be a sculpture a copy must be the work of a sculptor and a production which is stamped with some of the artistic individuality and genius of the artist by whom it is produced. Some of the mantels are ornamented with moldings, fluted columns or pillars, and the conventional garland, vase, disk, Grecian border, or spray of leaves. The flutings and moldings on the mantels ornamented in this way were executed by marble masons, and the conventional ornamentation, such as garlands, disks, sprays, and Grecian borders by ornamentalists, or, if by sculptors, then by sculptors doing nothing higher than ornamental work.

Mantels of such a character are unquestionably artistic, esthetic, and all that, but they certainly can not be classed as sculptures without doing violence to the term.

One of the mantels has fluted columns and a frieze ornamented with garlands and a panel on which is carved two children playing with a basket of fruit. Another of the mantels has garlanded jambs bearing a carved head at the top. The frieze of the mantel is ornamented at the ends with carved cupids and a paneled center on which is chiseled in relief a small figure carrying a torch and tendering a dove to a reclining cupid. The figures on both of these mantels are declared by Plançon to be, and they appear to be, the work of a sculptor. If the panels containing these figures were separate entities they might be considered as sculptures, but, as it is, they are incidental parts of the mantels and nothing more. Possibly the inspiration of a sculptor might be so chiseled on a marble mantel that the identity and especially the utilitarian nature of the latter would be practically forgotten in the motif and artistic beauty of the sculptural work, in which event the marble mantel would become a piece of sculpture, but it can hardly be said that the small figures carved on the two mantels referred to accomplish that result or anything approaching it.

All the goods imported call attention to themselves as mantels, not as sculptures. They are artistic in the sense that they appeal to the finer tastes. Possibly they are even works of art, but if they are, they are works of architectural, not sculptural, art.

The decision of the Board of General Appraisers is *affirmed.*