UNITED STATES *v.* HUNT DIEDERICH (No. 3428) [1]

United States Court of Customs and Patent Appeals, November 2, 1931

*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham, jr.*, special attorney, of counsel), for the United States.

No appearance for appellee.

[Oral argument October 12, 1931, by Mr. Lawrence; submitted on record by appellee]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

[1] T. D. 45274.

The merchandise involved was described in the report of the collector at the port of New York as one weather vane, one candlestick, and five so-called "pot stands" for table use, composed wholly or in chief value of metal, and was assessed for duty by him at 40 per centum ad valorem under paragraph 399 of the Tariff Act of 1922, the pertinent part of which reads as follows:

PAR. 399. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 40 per centum ad valorem.

The importer protested, claiming that the involved articles were works of art, productions of an American artist residing temporarily abroad, and free of duty under paragraph 1704 or paragraph 1707, or, alternatively, dutiable at only 20 per centum ad valorem under paragraph 1449 of the Tariff Act of 1922. The pertinent parts of the paragraphs read, respectively, as follows:

PAR. 1704. * * * original sculptures or statuary, including not more than two replicas or reproductions of the same; but the terms "sculpture" and "statuary" as used in this paragraph shall be understood to include professional productions of sculptors only, whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal, or cast in bronze or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only; and the words "painting" and "sculpture" and "statuary" as used in this paragraph shall not be understood to include any articles of utility, nor such as are made wholly or in part by stenciling or any other mechanical process; * * *

PAR. 1707. Works of art, productions of American artists residing temporarily abroad, * * *

PAR. 1449. Works of art, including paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same; statuary, sculptures, or copies, replicas, or reproductions thereof; and etchings and engravings; all the foregoing, not specially provided for, 20 per centum ad valorem.

On the trial below, the importer, William Hunt Diederich, was called as a witness. He testified that he had cut certain silhouettes or figures representing animals out of iron. One, mounted on a frame, was designated by him as a "horse weather vane." Another was mounted on a candlestick because, as he said, he did not know where else to put it. The third item involved was described by the witness as pot stands or trivets, used "to put a hot pot on."

A "trivet," as defined in Funk & Wagnalls New Standard Dictionary, is "A three-legged stand; especially, a tripod to hold cooking-vessels near a fire."

The witness further testified that the involved articles might be used for whatever purpose desired, and that they were decorative. He said that he was a "sculptor and a painter," and that, while

residing temporarily abroad, he had made the imported articles. During the course of his direct examination he was asked:

What was the main feature of these items; was it a candlestick, a weather vane, or the cutting?

He replied:

It depends on what people would consider the most important; it was a question of taste.

No exhibits of any kind were offered in evidence as an aid to the court in determining the character of the involved merchandise.

The Government submitted no evidence.

On this record the court below held that the involved articles were not free of duty under paragraph 1704, because they were articles of utility; that, although they were works of art produced by an American artist residing temporarily abroad, they were not entitled to free entry under paragraph 1707, because of the failure of the importer to comply with certain regulations prescribed by the Secretary of the Treasury; that they were dutiable as "sculptures" at 20 per centum ad valorem under paragraph 1449; and, accordingly, overruled the protest, so far as it claimed free entry, and sustained the claim therein for classification under paragraph 1449.

From this judgment the Government has appealed to this court and here contends that the involved articles are not "works of art" nor "sculptures" within the purview of paragraph 1449.

In the case of *United States* v. *Olivotti & Co.*, 7 Ct. Cust. Appls. 46, T. D. 36309, this court, in holding that a marble font and marble seats, although the production of a professional sculptor, were not "sculpture" as that term was employed in paragraph 376 of the Tariff Act of 1913, said:

* * * These carvings, even if they could be regarded as demanding the exercise of sculptural art, were evidently designed as an embellishment of the seats, and it would be going far to say that of themselves they were sufficient to give the character of sculptures to the entirety of which they are a minor, not a predominating, part. It may be conceded for the purposes of this case that because of the sculptural work upon them, the articles under consideration have an artistic beauty which otherwise they would not possess. Nevertheless, no one gazing upon them can forget that they are seats or chairs and that they are not the expression of the sculptor's impulse to imitate some object in nature as he conceived it to be, but a conception brought to material form primarily and principally to serve a useful purpose, and not to please. The making of seats and chairs is strictly industrial, not sculptural, art; and when the sculptor's hand is called upon to make such conveniences artistic and beautiful, his work reaches no higher plane than the purely decorative, unless it be so compelling that the utilitarian achievement of the artisan is lost in the realized sentiment of the artist. *United States* v. *Baumgarten*, 2 Ct. Cust. Appls. 321, 323–324, T. D. 32052; *Lazarus* v. *United States*, 2 Ct. Cust. Appls. 508, 511, T. D. 32247; *Consmiller* v. *United States*, 3 Ct. Cust. Appls. 298, 301, T. D. 32585. The seats

here involved were not designed to serve as mere settings for whatever of sculptural work there may be upon them, but as seats to which such sculptural work clearly bears the relation of adornment and nothing more. They must, therefore, be classed as articles of utility produced by industrial art because of a sense of need or usefulness and not as sculptures or examples of fine art the activities of which are chiefly, if not wholly, called into play by sentiment and for the purpose of appealing to the emotions.

In the case of *Frei Art Glass Co.* v. *United States*, 15 Ct. Cust. Appls. 132, T. D. 42214, and again in the case of *United States* v. *Hensel, Bruckmann & Lorbacher*, 18 C. C. P. A. (Customs) 297, T. D. 44504, this court reviewed and approved the decision in the case of *Olivotti & Co., supra*, and other decisions of this court holding that paragraphs 376 of the Tariff Act of 1913 and 1449 of the Tariff Act of 1922 were intended to include examples of the free fine arts only and not those articles, although artistic and beautiful, which belong to the decorative and industrial arts.

There are no exhibits representative of the merchandise before us, nor is there anything in the record to establish that the involved articles are examples of the free fine arts. That they were designed to serve utilitarian purposes, although decorative to a degree, is manifest from the testimony of the artist himself. Furthermore, there is no evidence to establish that the sculptural work was not designed merely to embellish the imported articles, nor that it was a predominating, and not a minor, part of them. Obviously, then, it can not be said that the sculptural work performed by the artist gave the involved articles the character of "sculptures" as that term has been judicially defined. They must, therefore, be classed as articles of utility produced by industrial art, as held by the collector.

The judgment is *reversed*.

BLAND and GARRETT, Judges, concur in the conclusion.