LAZARUS, ROSENFELD & LEHMANN *v.* UNITED STATES (No. 624).[1]

ALABASTER PEDESTALS UNDER TARIFF ACT OF 1909.

Without determining whether the importations rise to the dignity of "sculptures" in the arts, the character of their production by wholesale would exclude them from the terms of paragraph 470, tariff act of 1909. Under that paragraph the sculptures designated must be made by hand from solid blocks of alabaster and be, too, the professional production of a sculptor only. The merchandise was dutiable under paragraph 112, tariff act of 1909, as alabaster manufactured into articles.

United States Court of Customs Appeals, February 1, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7174 (T. D. 31331).

[Affirmed.] ·

*Churchill & Marlow* (*Wm. A. Hines* of counsel) for appellants.

*D. Frank Lloyd*, Assistant Attorney General (*Leland N. Wood* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This controversy concerns merchandise aptly described in the opinion of the Board of General Appraisers as alabaster pedestals about 3 feet high, each consisting of a base, column, and capital. Some of the pedestals are plain in their construction, some are in the form of smooth spiral columns with plain capitals and bases, and others are fluted columns more or less elaborately decorated with conventional designs, but having plain capitals and bases.

The importation of this merchandise presented for decision the question whether or not it was properly dutiable as "alabaster * * * manufactured into monuments, benches, vases, and other articles," as provided in paragraph 112 of the tariff act of 1909, at 50 per cent ad valorem, or as "sculptures," at the rate of 15 per cent ad valorem under paragraph 470 of said act.

The word "sculptures" in said paragraph 470, as a part of said paragraph, is further modified by the expression—

But the term "sculptures" as used in this act shall be understood to include only such as are cut, carved, or otherwise wrought by hand from a solid block or mass of marble, stone, or alabaster, or from metal, and as are the professional production of a sculptor only.

---

[1] Reported in T. D. 32247 (22 Treas. Dec., 227).

The intent of the Congress in these enactments may be in a measure ascertained from the comparative language of the paragraphs.

At the outset the fact that sculptures of the class provided for in paragraph 470 were accorded an exceptionally low rate of duty is significant. The provisions of the two paragraphs contrasted make it plain that as between the "manufactures of alabaster" provided for in paragraph 112 and the "sculptures" provided for in paragraph 470, the latter are deemed of a higher order of production. While the articles included in each paragraph are of precisely the same substance, the former having thereupon applied labor of either a less amount or of an inferior character, are made dutiable at a manifold higher rate than the latter. Obviously the higher order of productions was the object of this favor of Congress. Further, the language of the qualifying clause of paragraph 470, wherein it is provided that in order that the exceptionally low rate provided under that paragraph may be enjoyed, requires that the articles must be "the professional production of a sculptor *only*." This restriction of the class of articles accorded this exceptionally low rate of duty to such as have been produced by a higher order of labor, skill, and genius affords light upon the intent of the Congress. The included requirement that they must be "cut, carved, or otherwise wrought *by hand*" is another guide to the intent of the Congress, when it is noted that the character of that hand is further required by the statute to be one guided by a higher order of intelligence, skill, and art.

So, the appositive influence of the language of paragraph 470 is instructive. Paragraph 112 provides for "alabaster manufactured into monuments, benches, vases, and other articles." Obviously many of such articles would be within the term "sculptures." That term, therefore, in paragraph 470 must be so construed, if possible, as not to conflict with the terms of the former paragraph. In this the former must be held to be more or less an index of what was intended by the latter. Reading the two paragraphs together, and bearing in mind the foregoing observations as to the noted evidences of the congressional purpose, therefore, we have no difficulty in ascertaining the legislative intent as calculated upon the one hand to protect the labor and industrial arts of this country against the competition of similar and cheaper labor of foreign countries, while the other paragraph, upon the other hand, permits in the interest of art and education the introduction into this country at a low rate of duty such sculptures as are the product of a higher order of skill and artistic conception. The purpose of Congress is therefore best subserved by confining the application of the latter paragraph as thus indicated.

Paragraph 470, as hereinbefore quoted, differs only slightly from the corresponding paragraph of the tariff act of 1897. The only

change is that of the word "sculptures" in the act of 1909, being substituted for the word "statuary" in the act of 1897.

It is said by the Board of General Appraisers in its opinion that undoubtedly the word "sculptures" gives a broader significance and scope to the statute than the word "statuary," and by reason of that fact a more extended scope is to be accorded this paragraph of the act of 1909 than to the corresponding paragraph of the act of 1897. This is undoubtedly true.

The character of the merchandise, however, imported in this case, and the facts with reference to the production thereof as disclosed by this record, and the findings of the Board of General Appraisers, which seem amply supported by the facts in the record, render unnecessary, in our opinion, the consideration of the exact scope or any precise definition of the word "sculptures" as herein employed by Congress.

The line of demarcation between that which constitutes a sculpture, as recognized in the arts and history, and that which does not arise to the dignity of such, is one often difficult of determination and dependent upon narrow lines of distinction. If that were the task imposed upon this court in this instance an available aid and assistance is afforded the court by the able and exhaustive review of authorities made by the counsel for the Government and presented in this case.

We think, however, that, without determining the precise point whether or not the imported merchandise in this case does or does not arise to the dignity of, and is or is not included within the definitions of, "sculptures," as that word, unmodified by any language whatsoever, is accepted in the arts, this production is excluded from the benefits of the particular paragraph by reason of the excluding language above quoted. That language requires, as a qualification to what sculptures may be introduced into the commerce of this country under that paragraph, that such sculptures be made "by hand;" that they be made "from solid blocks of alabaster;" that they be made as "the professional production of a sculptor only." Conceding they are sculptures, were they such made in this manner?

The Board of General Appraisers found, as a fact in the case, that the importation was not "the professional production of a sculptor only." The board states:

> They were made in large establishments which apparently turn out thousands of such pedestals every year, and wherein a large force of mechanics and artisans are employed.

We think this finding of the board amply sustained by the evidence. It appears that they are such articles as are ordered from catalogues,

according to a number·distinctive of a particular standard·design, and that while the institutions wherein they are produced are superintended by such well-recognized sculptors as Barbefiere and Solaini, the evidence falls far short of showing that there is any further consideration given their production of these pedestals than the general superintendence of their production by the labors of those not entitled to be classed as "professional sculptors." Undoubtedly the same articles· produced in the manner exacted by the statute might present a record for consideration which might lead to a different conclusion.

There is, however, in this record nothing which characterizes the production of the particular articles of importation as products of the immediate design or superintendence or personal labor essential under the decisions and the language of the statute to so impress the production with any of the attributes of skill or personality or impressiveness of any character, which can ·properly identify the productions with any of the accomplishments, skill, labor, or designs of any particular sculptor, or even of a sculptor. They are produced by the thousands each year, generally superintended, it is true, by admittedly professional sculptors, but in no sense receiving the personal design, direction, workmanship, or other attention necessary to impress upon the article itself, or in any wise dignify or identify it as the work of a professional sculptor. The merchandise constitutes industrial products and not sculpture, as provided in the eliminating language of paragraph 470.

The workmanship and character of these articles as imported does not differ in any substantial particular from the usual order and kind of "monuments, benches, vases," as defined in paragraph 112. They may well be included within the catch-all provision of that paragraph as "other articles" as they are similar to the previously enumerated articles. All such, as a rule, have some degree· of ornamentation not dissimilar to that upon the imported merchandise. It may well be concluded upon that point alone that this merchandise, not further ornamented than the usual character of articles provided for in paragraph 112, and not having in design any special attributes which impress the eye or arrest the mind with the peculiar beauty or impressiveness of its constructive qualities, is not within the category of sculpture as contemplated by Congress and afforded an exceptionally low rate of duty as a matter of art; but rather as within the category of industrial productions. Being, therefore, rather of the class of the industrial products than matters of art, we do not think they are entitled to the benefits of the low rate of duty afforded by paragraph 470.

Decision *affirmed*.