This case was heard with United States *v.* Downing (6 Ct. Cust. Appls., 545; T. D. 36197), in which opinion is handed down concurrently herewith.

---

## UNITED STATES *v.* DOWNING & CO. (No 1591).[1]

1. SCULPTURE—DEFINITION.

Neither the tariff act of 1913 nor paragraph 376 thereof limits the definition of the word "sculptures" as used in said paragraph, and the word must be given the meaning ascribed to it in common understanding. Sculpture is the production of a professional sculptor; it embodies professional skill, taste, touch, and artistic conception, appealing not only to the eye but to the emotions as well.

2. COPY—REPLICA—REPRODUCTION.

A copy, replica, or reproduction under this paragraph must possess the same qualities or characteristics, and must be made by a professional sculptor or under his supervision.

[1] Reported in T. D. 36197 (30 Treas. Dec., 319).

3. LEGISLATIVE HISTORY SHOWING LEGISLATIVE INTENT.

The history of this legislation shows that Congress did not intend, by enacting paragraph 376 as new legislation in the act of 1913, to lower the standard of work necessary to constitute sculpture or to dispense with the requirement that such work must be produced by, or under the supervision of, a sculptor, thereby admitting at a low rate of duty the commercial productions of artisans because of characteristics rendering them attractive, ornamental, or beautiful.

4. MANUFACTURES OF MARBLE—WORK OF ART—SCULPTURE.

Marble parts of a temple designed as an ornament for a yard or garden, which are embellished or ornamented with more or less elaborately cut or carved representations of various kinds, there being no claim that they are the professional production of a sculptor, are dutiable, under paragraph 98, tariff act of 1913, as manufactures of marble, and not under paragraph 376 as works of art or sculpture.

5. SAME.

If these parts are not sculpture, it follows that they are not works of art under paragraph 376.

6. PARTS—WHOLE.

Having denied classification as works of art to the parts of this temple, the court refuses to classify the whole temple as a work of art.

United States Court of Customs Appeals, February 21, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7747 (T. D. 35564).

[Reversed.]

*Bert Hanson*, Assistant Attorney General (*John J. Mulvaney*, special attorney, of counsel), for the United States.

*Kenneth Howes* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

As stated in the opinion of the Board of General Appraisers the entire importation here in question is described in the invoice as follows:

Stone round temple " Palladio " of the seventeenth century.
Stone ring.
Iron dome in three parts for the temple.
Round marble table.

At the beginning of the hearing before the board all claims upon the last three mentioned items or parts of the temple were abandoned, the reason for which, as stated by importers here, was that their expert witness was of opinion that the stone ring, the iron dome, and round marble table were new parts, and the record seems to support the statement.

The merchandise was assessed by the collector under paragraph 98 of the tariff act of 1913, which is as follows:

98. Marble, breccia, onyx, alabaster, and jet, wholly or partly manufactured into monuments, benches, vases, and other articles, or of which these substances

or either of them is the component material of chief value, and all articles composed wholly or in chief value of agate, rock crystal, or other semiprecious stones, except such as are cut into shapes and forms fitting them expressly for use in the construction of jewelry, not specially provided for in this section, 45 per centum ad valorem.

The protest claimed free entry under paragraph 652, as well as under paragraph 656. The board denied free entry, but sustained another alternative claim in the protest that the merchandise was dutiable under paragraph 376, which is here quoted:

376. Works of art, including paintings in oil or water colors, pastels, pen and ink drawings, or copies, replicas, or reproductions of any of the same, statuary, sculptures, or copies, replicas, or reproductions thereof, and etchings and engravings, not specially provided for in this section, 15 per centum ad valorem.

The Government only appeals, hence the precise issue is whether the merchandise is dutiable as assessed or as held by the board.

Considered as an entirety the importation is a round temple, the dimensions of which are not shown. It is represented by photographic exhibits and is probably intended to be set up in a yard or garden. It does not appear to be designed to serve any special utilitarian purpose and is claimed to be devoted to and designed for artistic purposes. By Exhibit 5 the general appearance and circular form is shown. The main structure seems to be composed of marble or stone resting upon a foundation and surmounted by a dome. The board assumed, and we judge correctly, that the stone ring which was mentioned in the invoice and which consists of several pieces was in whole or in part of this foundation; that the dome was a grille work of iron; and that the marble table, if designed in connection with the temple, was appropriate to be placed inside. With the foundation stones, the dome, and the table we are not concerned, except so far as they are involved in the question of entirety, hereinafter referred to.

Exhibit 1 represents eight pedestals of rectangular shape, each of which supports one column represented by Exhibit 2. Exhibit 3 is a representation of one of the pieces resting upon and supported by the columns, of which pieces there are a sufficient number to constitute a stone cornice or frieze, which in turn supports the iron dome. Exhibit 4 represents seven pedestals or supports upon which rest the respective parts of a marble bench which extends around the temple between the pedestals except at the entrance. This bench is referred to by the board as a low balustrade with extended slabs forming seats. Each of the pedestals is of ornamental appearance, with heraldic devices or designs cut or carved upon the sides; the columns are circular, with various ornamental designs cut or carved thereon; the pieces which constitute the cornice or frieze are also somewhat elaborately ornamented and so are the pedestals or supports of the seats or bench.

The issue therefore is as to the classification of the articles represented by these four exhibits last mentioned, all of which are of marble and, as appears, are embellished or ornamented with more or less elaborately cut or carved representations of various kinds upon the surfaces thereof. For convenience these will be collectively hereinafter referred to as the temple.

The Government contends that the board erred in that it did not assess the whole importation as an entirety, which claim we do not find it necessary to consider; also that the temple, if considered as an entirety, is not a work of art within the contemplation of paragraph 376, and in this connection urges that to be a work of art thereunder the temple must be a sculpture, as that term is properly defined.

In passing upon the importers' alternative claims of free entry under paragraph 656 the Board of General Appraisers found that the antiquity necessary for free entry thereunder had not been shown.

As the consideration of the issues requires more or less reference to paragraph 652, we here insert the same:

652. Original paintings in oil, mineral, water, or other colors, pastels, original drawings and sketches in pen and ink or pencil and water colors, artists' proof etchings unbound, and engravings and wood cuts unbound, original sculptures or statuary, including not more than two replicas or reproductions of the same; but the terms "sculpture" and "statuary" as used in this paragraph shall be understood to include professional productions of sculptors only, whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal, or cast in bronze or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only; and the words "painting" and "sculpture" and "statuary" as used in this paragraph shall not be understood to include any articles of utility, nor such as are made wholly or in part by stenciling or any other mechanical process; * * *.

Touching the claim for free entry under this paragraph the board said:

The law as found in paragraph 652 provides for the free importation of "original sculptures." It further provides, however, that the term "sculpture" as used in the paragraph shall be understood to include professional productions of sculptors only. Testimony that this production was by a professional sculptor, or that it is an original, was not furnished by the importer. Hence we conclude that the case has not been brought within the purview of paragraph 652.

From the judgment of the board that the temple was not entitled to free entry under either of these paragraphs the importers took no appeal. There is therefore no claim here that it is an original sculpture or the professional production of a sculptor only.

After so far disposing of the importers' claims the board proceeded to discuss the question of whether the temple could be classified under paragraph 376 as a work of art. It was their opinion that if of sufficient excellence it might be so classified, and as a witness for

the importers had testified that it was a work of art and as a witness for the Government that it was highly artistic, held that it was a work of art thereunder.

The Government had claimed that it could not be so classified in that it was not *ejusdem generis* with other works of art mentioned therein. Of this the board said "we do not agree with this contention, however, because if it is a work of art at all, within the meaning of the paragraph, it is as 'sculptures' specifically mentioned in the paragraph."

The board's judgment, therefore, if we correctly understand the opinion, was this: The importation under consideration was not shown to possess the antiquity required under paragraph 656, nor to be an original sculpture, the production of a professional sculptor only, or one of not more than two replicas or reproductions thereof under paragraph 652, but was, nevertheless, a work of art under paragraph 376 because it was a sculpture thereunder.

This conclusion at once suggests the query as to what is the difference, if any, between the meaning of the term "sculptures" in paragraphs 652 and 376. It should be observed that paragraph 376 includes sculptures in the term "works of art," and provides that sculptures shall embrace copies, replicas, or reproductions thereof if none of the same are otherwise provided for in the section. Paragraph 652, on the other hand, limits the "sculptures" therein provided for to originals, which are the professional productions of sculptors only, whether cut, carved, or otherwise wrought by hand from certain materials, and made as the professional productions of such sculptors, including not more than two replicas or reproductions of the same, with the proviso that articles of utility as well as those made wholly or in part by stenciling or other mechanical process are not to be included therein, but it does not undertake to give any meaning to the word other than for the purposes of that paragraph.

Further examination of paragraph 652 shows that the provisions of paragraph 470 of the act of 1909 have been embodied therein. For convenience we insert here the earlier paragraph:

470. Paintings in oil or water colors, pastels, pen and ink drawings, and sculptures, not specially provided for in this section, fifteen per centum ad valorem; but the term "sculptures," as used in this act, shall be understood to include only such as are cut, carved, or otherwise wrought by hand from a solid block or mass of marble, stone, or alabaster, or from metal, and as are the professional production of a sculptor only, and the term "painting," as used in this act, shall be understood not to include such as are made wholly or in part by stenciling or other mechanical process.

We think comparison of the two shows that in a general way it was the purpose of Congress by the enactment of paragraph 652 to give free entry to articles that had previously been dutiable under paragraph 470. One of the chief differences between the two is that

such privilege is confined to two replicas or reproductions of sculptures and that articles of utility or such as are made wholly or in part by stenciling or other mechanical processes (the methods of the artisan) are excluded therefrom.

We also note that paragraph 470 enumerates certain things that shall be considered " sculptures " for the purposes of the act, while paragraph 652 confines its enumeration in that behalf to the purposes of the paragraph.

On the other hand, paragraph 376, which is new law, does not expressly define " sculptures," and does not limit the number of copies, replicas, or reproductions thereof that are entitled to the same benefit. It follows, therefore, that the word must be given the meaning ascribed to it in common understanding unless elsewhere limited. No such limitation is called to our attention. As to the common meaning of the word we have the benefit not only of cases disposed of by this court, but others as well, in which paragraph 470 and its predecessors have been considered and compared with paragraph 112 of the act of 1909 (identical with paragraph 98 of the act of 1913 except as to rate) and others *in pari materia.*

In United States *v.* Baumgarten (2 Ct. Cust. Appls., 321; T. D. 32052) it was held that paragraph 112 of the act of 1909 did not embrace artistic productions in marble of figures whose value depended " either upon the individual conception of the artist or upon his professional taste, touch, and spirit in execution," and that the term " marble manufactured " as used there would not be understood to cover a marble vase upon which a sculptor had chiseled lifelike figures, the whole comprising a single professional production full of artistic character, but was rather limited to commercial productions often of utilitarian character and produced in whole or in part by machinery or by the hand of a mere artisan. The meaning of the word " sculptures " in common understanding was considered by the court in this case.

In Lazarus *v.* United States (2 Ct. Cust. Appls., 508; T. D. 32247), comparing paragraphs 112 and 470 of the act of 1909, it was said in substance that the legislative intent was to protect the labor and industrial arts of this country against competition of cheaper similar labor in foreign countries and also designed to permit, in the interest of art and education, the introduction into this country at a low rate of duty of such sculptures as are the product of a higher order of skill and artistic conception.

In Consmiller *v.* United States (3 Ct. Cust. Appls., 298; T. D. 32585) it was said in discussing the meaning of " sculptures " in said paragraph 470, " though sculptor and decorator may both work in stone, between them there is a very wide gulf and the domain of one is seldom, if ever, invaded by the other. Ordinarily the ornamen-

talist in stone imitates that which he actually sees and his work goes no further than to please the eye. The sculptor, on the other hand, reproduces that which is pictured by his imagination; and his production appeals not only to the eye but to the emotions as well. In fine, one copies and the other, in a sense, creates and originates."

For other cases in this court announcing, so far as they touch upon the question, similar conclusions, see Stern *v.* United States (3 Ct. Cust. Appls., 124; T. D. 32381); Warren *v.* United States (3 Ct. Cust. Appls., 461; T. D. 33039); Downing *v.* United States (3 Ct. Cust. Appls., 473; T. D. 33043); United States *v.* Sterling Bronze Co. (4 Ct. Cust. Appls., 389; T. D. 33835); Marshfall Field & Co. *v.* United States (5 Ct. Cust. Appls., 191; T. D. 34324). See also Tutton *v.* Viti (108 U. S., 312), Merritt *v.* Tiffany (132 U. S., 167), Benziger *v.* United States (192 U. S., 38), Express Co. *v.* United States (94 Fed., 643, affirmed in 101 Fed., 111), United States *v.* Tiffany (160 Fed., 408), Vandegrift *v.* United States (162 Fed., 1003), Townsend *v.* United States (108 Fed., 801, affirmed in 113 Fed., 442).

The fact that paragraph 470 limited sculptures to the professional productions of sculptors only, a limitation not found in paragraph 376, as already noted, does not, as we view the matter lower the standard or quality of work required to constitute a sculpture within the meaning of the latter paragraph. In the common acceptation of the term, a work to be entitled to the characterization of sculpture must be the production of a professional sculptor. It must be a work that embodies professional skill, taste, touch, and artistic conception, appealing not only to the eye but the emotions as well, and although " scuptures " may include under the statute copies of recognized works of that art, yet such copies must possess the same qualities or characteristics, and, whether an original or a copy, must be made either by or under the supervision of a professional sculptor. It is unbelievable that a sculpture in the common understanding can be produced by one who has neither embraced that profession nor has artistic skill, taste, touch, or ability in exercising it.

Indeed, to hold otherwise would seem to result in a conflict of meaning or confusion of terms. A sculpture must obviously be the production of a sculptor and a sculptor would naturally be understood to mean a person who was in whole or in part engaged in the practice of that profession. To do this successfully (and without some degree of success one would not long be so engaged) it follows that the sculptor must have had instruction and experience in the art. To be successful to the end that his productions might attain the distinction of works of art it would further seem indispensable that he should possess artistic conception, taste, sense, and skill, together with the requisite ability to reproduce or present the same to the beholder or at least to see that others did it for him. In other words,

a sculptor, in the common meaning of the word, is not a skilled artisan, but a person who is capable of making or who does make sculpture his profession.

The use of the word " copies " in paragraph 376 in connection with the words " replicas or reproductions " does not justify or require any different conclusion.

" Replica " is by lexicographers generally in substance defined to be a duplicate executed by the artist making the original and to be considered as an original. Sometimes it is expressly related to works of art. (See Century and Standard dictionaries.)

The word " reproduction " signifies a thing which is reproduced, as well as the act of reproduction, and appears more often to refer to a function of living organisms. See discussion under " synonyms " following the word " duplicate " in the Standard Dictionary, wherein, among other things, it is said " a replica is a copy of a work of art by the maker of the original," and generally that " a copy is as near like the original as the copyist has power to make it; a duplicate is exactly like the original; * * * we may have an inaccurate copy but never an inaccurate duplicate."

The word " copy " is given many definitions. Among its synonyms are " reproduction," " imitation," " duplicate," and it evidently has a wider scope than is generally applied to " reproduction," but may not correctly include " replica." It also means that which is used as a model.

So far as we are advised the words " copies, replicas, or reproductions " have not before appeared in tariff statutes *in pari materia*, but it has been settled that " statuary " includes copies or reproductions thereof made under certain conditions.

In Tutton *v.* Viti (108 U. S., 312) copies of antique original models of unknown authorship, as well as copies of modern originals, the author of which was known, all such copies having been made by professional sculptors, were held to be statuary and the professional productions of a sculptor, the court saying (at pp. 313 and 314) :

There is nothing in the acts of Congress to limit the professional productions of a statuary or sculptor to those executed by a sculptor with his own chisel from models of his own creation and to exclude those made by him, or by his assistants under his direction, from models or from completed statues of another sculptor, or from works of art, the original author of which is unknown. An artist's copies of antique masterpieces are works of art of as high a grade as those executed by the same hand from original models of modern sculptors.

It was also held that it was the evident intent of Congress to put a much lower duty on statuary which was the professional production of a statuary or sculptor than on other manufactures of marble, the purpose being—

To encourage the importation of works of art by distinguishing between the productions of an artist and those of an artisan or mechanic; between what is

done in a sculptor's studio by his own hand or under his eye and what is done by workmen in a marble shop.

It will be noted that the court employs the word "copies" to designate the merchandise in the case.

In Merritt *v.* Tiffany (132 U. S., 168) bronze statues required by law "to be the professional productions of a statuary or professional sculptor only" were under consideration, and, citing the case last mentioned, it was again in effect held that copies of original works of art made under the direction or supervision of a sculptor, whether the originals were his creation or were the creation of some other artist, were nevertheless sculptures, and that it was the intent of Congress to distinguish between such productions and those of the manufacturer or mechanic. In this case the court employs the word "reproductions" as describing the merchandise. The effect of both these cases is that sculpture or statuary may include copies or reproductions by sculptors of works of art, the original design of which was their own or that of some other artist.

In this connection we observe that during the hearings before the Ways and Means Committee, the Association of American Painters and Sculptors duly appeared by its representative and made various suggestions and requests as to the treatment to be given to works of art in the new tariff law. (See vol. 5, pp. 5692 *et seq.*, of Tariff Schedules Hearings, 3d sess., 62d Cong.) Among other things it was suggested that the 20-year age limit for works of art, including paintings and sculptures, contained in the first completed sentence in paragraph 717 of the act of 1909 be abrogated and that a paragraph (which was tendered and was in its applicable provisions much like paragraph 652 as finally enacted) be substituted therefor; also that the last completed sentence in paragraph 717, relating to other works of art (except rugs and carpets), be retained. It was said with reference to statuary that there came a time when replicas or copies ceased to be art by reason of the number thereof, and became objects of trade, and to prevent this it was suggested that the number of replicas entitled to free entry ought to be limited and any larger number be taxed.

The committee was asked, if this view was adopted, to embody in the bill a new section, which was submitted, providing for a duty of 15 per cent ad valorem. This proposed section, in principle, was quite like paragraph 376 as found in the present law. In this connection it was expressly pointed out that the result of the suggestions so made to the committee, if adopted, would admit original sculpture that was a work of art made by a professional artist and a specified number of replicas of the same free of duty, while additional copies or replicas would be taxed as provided in the tendered paragraph, thereby protecting, as it was said, "trade sculptors" from competition with similar workmen abroad. It was also claimed

and with some show of reason, that such a provision would tend to keep out forgeries because, it was urged, "all importations of art will have to be accompanied by some proof that they are original works of art or else have to pay duties as copies."

The Italian Chamber of Commerce also preferred its request to the committee that works of art, regardless of age, should be admitted to free entry, if the original production of artists. (Vol. 5, p. 5009.)

It was not, so far as we can learn, claimed by anyone that an unlimited number of reproductions or copies of works of art, whether made by professional sculptors or artisans, should be given free entry, or that, if made by artisans only, they should not be classified as manufactures of marble.

As indicative of the effect of these representations upon the Ways and Means Committee and upon Congress, it appears that that part of paragraph 717 the repeal of which was recommended was not reenacted, except as some equivalent provisions may be found in paragraph 652; that the part of the same paragraph the retention of which was advised has been preserved in paragraph 656; and that paragraph 376, which, as we have already pointed out, corresponds in principle with the new paragraph suggested, has been enacted.

Now, in view of the foregoing we deem it unnecessary to attempt to define the exact scope of the words "copies or reproductions" in paragraph 376. They may have been employed in this new statute as a legislative adoption, for its purposes, of the sense in which these words had been used by the Supreme Court in the cases above referred to, and for the purpose of avoiding litigation, or they may have been used with the intent of carrying out in principle the recommendations of the representative of the Association of American Painters and Sculptors, or for both these purposes.

But in either, or, indeed, in any view, we unhesitatingly conclude that it was not the purpose of Congress in enacting paragraph 376 as new law to lower the standard of work necessary to constitute sculptures, nor to dispense with the requirement that such work must be produced by or under the supervision of a sculptor. Neither was it thereby intended to raise from the class of manufactures of marble under paragraph 98, as the same had been judicially determined under paragraph 112 of the act of 1909, and statutes *in pari materia*, such articles as those now before us.

So far as appears in this case we find no reason to believe that Congress by the reenactment in paragraph 98 of paragraph 112 of the act of 1909 intended it should have a different application than that which it had theretofore received.

The n. s. p. f. provision in paragraph 376 coupled with the absence of the word "original" before sculptures leaves wide scope for the operation of the paragraph. An article which would be a sculpture under paragraph 652 would be likewise such under paragraph 376,

and, after the limited number of replicas or reproductions provided in paragraph 652 had been given free entry, further copies, replicas, or reproductions thereof would be classifiable under paragraph 376. But the essential qualification that the original must be of the quality entitling it to rank as a work of art is not removed. Any different conclusion would seem to result in opening the door to the low rate of duty provided in the paragraph for a great variety of objects, if they possess characteristics that render them attractive, ornamental, or beautiful, although nothing more than the production of an artisan and made purely for commercial purposes. We are of opinion Congress did not so intend.

We disagree with the importers' claim that even though the temple is not a sculpture it is nevertheless classifiable as a work of art under paragraph 376. We think the board was right in holding that it was only by virtue of being a sculpture that it was entitled to such classification. Therefore failing to find it a sculpture it can not be considered a work of art. See in this connection United States *v.* Perry (146 U. S., 71).

There is another feature of this case to which attention should be called. Without taking time or space to recite the evidence of record, it appears therefrom that under their claim for free entry the importers undertook to show that the temple was of the antiquity provided in paragraph 656, more than 100 years, and also that it was an original sculpture or one of two replicas or reproductions thereof made by a professional sculptor under paragraph 652 and their evidence, undisputed, tended to establish these facts.

The Government's evidence overwhelmingly, as we think, and doubtless it was so considered by the board, negatived each of these claims and established that the temple had been produced partly by machinery, within less than 50 years, and in addition had been designedly treated with applications tending to produce and which had produced a simulated appearance of antiquity evidently sufficient to mislead the importers' expert witness. In other words, methods had been deceitfully employed to make the marble appear to be older than in fact it was. We take occasion to say here, however, that this is not imputed to the importers.

The Government's evidence also tended to establish, and we think did establish, that much of the alleged carving upon the parts composing the temple was neither artistic nor skillful in design or production and was not a work of sculptural art.

Now, to say that although considered with regard to its essential parts the temple is not artistic, yet as a whole it is a work of art, would be going far in view of the patent deceit attempted with regard to its age.

The judgment of the Board of General Appraisers is *reversed.*