FREI ART GLASS Co. *v*. UNITED (No. 2820) [1]

---

[1] T. D. 42214.

United States Court of Customs Appeals, May 19, 1927

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellant.
*Charles D. Lawrence* (*Marcus Higginbotham*, special attorney, of counsel),
for the United States.

[Oral argument March 17, 1927, by Mr. Tompkins and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD,
Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellant imported from Germany, under the Tariff Act of 1922, five shipments of articles which were entered as "works of art and mosaics." These articles are of three classes. First, a piece known as Exhibit 1, made of large pieces of metallic glass joined together and painted with mineral paint by a recognized artist and thereafter vitrified, the whole representing a scene from the life of Christ. Second, copies made of small pieces of colored glass, of certain mosaics of the third century, to be found in the cathedral of Santa Maria Maggiore in Rome, Italy. Third, original mosaic works, made of small pieces of colored glass representing certain stations of the cross and scenes in the life of Christ, and other religious and mythological conceptions. The samples before us show these articles to vary in size from 7 by 9 inches to 28 by 42 inches.

The five entries involved here are numbered, respectively, F254, F255, 1911, 2061, and 1414. At the time of entry there was attached to said entry F255 an affidavit on Form 3331 of the Treasury Department (Customs Cat.) showing that case 2782 of said entry "2 mosaic pictures" was expressly imported for presentation to St. Anthony Church at Atlanta, Ga. Letters tendering these to said church, signed by the donor, together with acceptances thereof, are also attached. As to case 2781, certain mosaics on paper, a similar Form 3331, showing the mosaics to have been imported for presentation to the St. Louis Cathedral at St. Louis, Mo., was attached. Reference is made in the entry to the fact that the necessary letter signed by the donor and acceptance thereof is filed with consumption entry F473. No point is made that these are not in proper form, and we shall assume, therefore, that they comply with the requirements of the law and Customs Regulations on the subject. The protest as to entry F254 was abandoned on the trial. It was claimed at the time of entry, and is claimed now, that all the articles named in said entry F255 are entitled to free admission under paragraph 1707 of the tariff act of 1922. There was no such claim as to any of the articles named in the three remaining entries.

The collector classified all the importations as manufactures of glass under paragraph 218 of said tariff act at 55 per centum. The importer protested, claiming the goods to be free of duty under paragraph 1707, or, in the alternative, free of duty under paragraph 1704, or dutiable at 20 per centum ad valorem under paragraph 1449 or at 40 per centum ad valorem under paragraph 214, of said act. The claim under said paragraph 214 was not urged either in the court below or here, and hence will be considered as abandoned. The court below, after a hearing, overruled the protest except as to Exhibit 1, a painting on glass hereinbefore referred to as the first class of works represented by said importations, and as to such painting, the protest was sustained under paragraph 1704, as an original painting in oil. From that judgment the importer appeals, assigning as error the findings of the court below, except as to said Exhibit 1.

Four witnesses were called and testified at the hearing before the court below. In view of our conclusions of law, it will not be necessary here to state at length the testimony of such witnesses. It will be sufficient to say that they were all persons well qualified to discuss art subjects. In substance they stated that the present importations are works of art, in the general acceptation of those terms; that Exhibit 1 is a painting on glass designed and executed by an artist of note; that the second class of importations hereinbefore named are exact copies of well-known works of art, both original and copies having been executed by well-known artists; that the third class named consists of original works designed and executed by artists of note. It is further made to appear that such works can not be created by artisans, but require the work of artists. In addition, the history of the art of mosaics is shown, showing that such art is an ancient one and one that has been practiced by many celebrated artists, both ancient and modern. It further appears that these works are commonly called "mosaic paintings."

It is also shown that the imported articles are all intended to be set in cement in walls or ceilings and that such mosaics are always thus used, except as to some small pieces, which are backed with boards and are thus hung in museums. In addition to this testimony, several samples of the mosaic work in question are before us. These are well executed and give every impression, to the lay mind at least, of the exercise of a high order of artistic ability.

There are three questions here for our consideration. First, whether the imported mosaics are properly admissible under paragraph 1704. Second, whether they are properly admissible as works of art under paragraph 1707 or 1449. Third, whether the mosaics imported for presentation to religious institutions are properly admissible under paragraph 1707. These paragraphs, together with

the paragraph under which they were classified, are here inserted, in so far as they are material:

218. * * * and all articles of every description not specially provided for, composed wholly or in chief value of glass or paste, * * * 55 per centum ad valorem; * * *.

1449. Works of art, including paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same; statuary, sculptures, or copies, replicas, or reproductions thereof; and etchings and engravings; all the foregoing, not specially provided for, 20 per centum ad valorem.

1704. Original paintings in oil, mineral, water, or other colors, pastels, original drawings and sketches in pen, ink, pencil, or water colors, artists' proof etchings unbound, and engravings and woodcuts unbound, original sculptures or statuary, including not more than two replicas or reproductions of the same; * * * and the words "painting" and "sculpture" and "statuary" as used in this paragraph shall not be understood to include any articles of utility, nor such as are made wholly or in part by stenciling or any other mechanical process; * * *.

1707. Works of art, productions of American artists residing temporarily abroad, or other works of art, including pictorial paintings on glass, imported expressly for presentation to a national institution or to any State or municipal corporation or incorporated religious society, college, or other public institution, including stained or painted window glass or stained or painted glass windows which are works of art when imported to be used in houses of worship and when ordered after the passage of this act, valued at $15 or more per square foot, and excluding any article, in whole or in part, molded, cast, or mechanically wrought from metal within twenty years prior to importation; but such exemption shall be subject to such regulations as the Secretary of the Treasury may prescribe.

Paragraph 1704 can hardly be held to apply to such articles as those imported here, except as to Exhibit 1, which is an original painting on glass. The court below, however, has sustained the protest of appellant as to this importation, and hence no question arises concerning it. If the imported articles are to be included within paragraph 1704, it must obviously be under the designation of "Original paintings in oil, mineral, water, or other colors." While there is testimony to the effect that these mosaics are called "mosaic paintings," they are obviously not made by the use of oil, mineral, water, or other colors. This language refers to the laying of such colors upon a surface by a painter. The articles before us are not so made, but are constructed of bits of colored glass, the product of the glassmaker. We are of opinion that the imported articles do not come within the scope of paragraph 1704.

As to the claim for free admission under paragraph 1707 of such part of the imported mosaics as are intended not for presentation, but for commercial purposes, we conclude that such claim is without merit. Paragraph 1707 refers to two classes of works of art, first, the productions of American artists residing temporarily abroad, and second, presentation pieces. There is nothing in the record to indicate that, even if the imported articles now under consideration

were to be classified as works of art, they belong to either of the classes designated in this paragraph. They can not, therefore, be there classified.

That these importations are works of art in the general acceptance of the terms must be conceded. They embody the artistic concéption and artistic execution as well. If it were a matter of first impression, the court might well conclude that they were works of art in every sense, and as such included within that designation as it appears in paragraph 1449. But we feel we are precluded from so doing by an almost uniform administrative practice of long standing and by a line of well-considered authorities.

In *Petry Co.* v. *United States*, 11 Ct. Cust. Appls. 525, this court had before it certain mosaic pictures made of marble, the execution of which is said in the opinion to be "artistic in a marked degree." Presiding Judge Martin, speaking for the court, reviewed the administrative practice of the Treasury Department and the authorities on the subject exhaustively, and came to the conclusion that, in a tariff sense, such mosaics had never been held to be works of art, but rather manufactures of the various materials of which they were composed. In so doing he cited with approval the opinion of Smith, J., in *United States* v. *Olivotti & Co.*, 7 Ct. Cust. Appls. 46, in which it was said:

> In our opinion the expression "works of art," as used in paragraph 376, was not designed by Congress to cover the whole range of the beautiful and artistic, but only those productions of the artist which are something more than ornamental or decorative and which may be properly ranked as examples of the free fine arts or possibly that class only of the free fine arts imitative of natural objects as the artist sees them, and appealing to the emotions through the eye alone. The potter, the glassmaker, the goldsmith, the weaver, the needlewoman, the lace maker, the woodworker, the jeweler, all produce things which are both artistic and beautiful. It can hardly be seriously contended, however, that it was the legislative purpose to include such things, beautiful and artistic though they may be, in a provision which, as shown by its history and the enumeration therein contained, was intended to favor that particular kind of art of which painting and sculpture are the types.

It will not be necessary to cite here the various authorities relied upon in *Petry Co.* v. *United States, supra,* as they are fully set out and commented upon in the opinion in that case. It will be énough to say that they fully sustain the decision therein arrived at. In addition to the authorities therein cited, it will be found the following also sustain the conclusion reached therein: *United States* v. *Perry,* 146 U. S. 71; *Lazarus* v. *United States,* 2 Ct. Cust. Appls. 508; *United States* v. *Downing,* 6 Ct. Cust. Appls. 545; *Reardon* v. *United States,* 11 Ct. Cust. Appls. 233.

While it may seem incongruous to hold that things which are in fact works of art are not so in a tariff sense, the apparent reason therefor lies in the manifest intent of Congress to admit at a low rate of duty artistic works representative of the fine arts such as paintings

and sculptures, and at the same time to protect the American producers of such articles as belong to the decorative and industrial arts. The idea is fully stated in the opinion in *Lazarus v. United States, supra.*

Paragraph 376 of the tariff act of October 3, 1913, was repeated in substantially the same language in paragraph 1449 of the Tariff Act of 1922. While the opinion in the *Petry* case had not been handed down prior to the passage of the said act of 1922, the Congress must be held to have known of the limitation placed upon the meaning of the statutory term "works of art" by this court and the Supreme Court before that time. Having made no substantial change of language, we must presume the Congress assented to the interpretation. *United States v. Brown & Co.,* 13 Ct. Cust. Appls. 3; *United States v. Basket Imp. Co.,* 13 Ct. Cust. Appls. 98; *United States v. Beierele,* 1 Ct. Cust. Appls. 457; *Shallus v. United States,* 1 Ct. Cust. Appls. 556.

We therefore hold that no error was committed in classifying these mosaics as manufactures of glass and not as works of art.

As to those mosaics which are shown to have been imported for presentation and are claimed to be free under paragraph 1707, a somewhat different question is presented.

This paragraph provides free entry for "works of art  *  *  * including stained or painted window glass or stained or painted glass windows *which are works of art."* The words italicized are new in the Tariff Act of 1922, and it is argued that it might well be held that the Congress had here manifested a plain intent to depart from the construction which limited works of art to those of the fine arts, because it had here recognized that there might be articles which are works of art and which are not within the class represented by paintings and sculptures.

The language of the statute being somewhat ambiguous, recourse may be had to its legislative history to ascertain its purpose and meaning. *Wright & Graham Co. v. United States,* 5 Ct. Cust. Appls. 453; *Perry, Ryer & Co. v. United States,* 6 Ct. Cust. Appls. 201.

The provisions which are contained in paragraph 1707 of the Tariff Act of 1922 are those which have been substantially incorporated in every tariff act since the act of October 1, 1890, the only variation being in regard to the amount of protection which should be afforded to the stained or painted glass and stained or painted glass window industries. Paragraph 757 of the act of October 1, 1890, was as follows:

Works of art, the production of American artists residing temporarily abroad, or other works of art, including pictorial paintings on glass, imported expressly for presentation to a national institution, or to any State or municipal corporation, or incorporated religious society, college, or other public institution, except

stained or painted window-glass or stained or painted glass windows; but such exemption shall be subject to such regulations as the Secretary of the Treasury may prescribe.

The tariff act of August 27, 1894, paragraph 686, so changed this language that stained or painted window glass, or stained or painted glass windows were included as works of art.

The acts of July 24, 1897 and August 5, 1909, repeated the language of the act of 1890, *supra*, while the act of October 3, 1913, recurred to the language of the act of August 27, 1894. It will thus be seen that the only changes made were those respecting the policy of whether stained or painted window glass, or stained or painted glass windows should be exempted from duty.

The Tariff Act of 1922 was passed by the House of Representatives with a provision (par. 1688) including stained or painted window glass and stained or painted glass windows as works of art. When the bill went to the Senate Committee on Finance strong representations were there made by American producers of such goods, asking that this paragraph be so modified as to exclude such products from the benefit of the free list provisions of the paragraph, the argument being made that the American industry was being endangered by such free entry. Senate Hearings, Vol. VI, pp. 5011–5059. The Senate Committee on Finance and the Senate, in apparent partial compliance with this request, amended the bill to the form now appearing in the statute; in other words, by limiting the free entry provision to stained or painted window glass or stained or painted glass windows "*which are works of art when imported to be used in houses of worship and when ordered after the passage of this act, valued at $15 or more per square foot.*"

It will thus be seen that the only apparent purpose of the Congress in the insertion of this language was to limit the provision for the free admission of stained or painted window glass or windows to one class thereof. Far from such provision being intended to broaden the language to include any article of whatever material composed, which might be a work of art, it was rather intended as a narrowing provision. The words: "including stained or painted window glass," etc., are words of extension only. *Petry* v. *United States, supra.* As such, they can not extend any further than the articles mentioned in connection therewith, and such enumerated articles do not include mosaics.

No reason appearing why the words "works of art," as they appear in paragraph 1707, should have any different meaning from that in paragraph 1449, we conclude that these presentation pieces, also, were properly classified as manufactures of glass.

The judgment of the court below is *affirmed.*

DISSENTING OPINION

Smith, Judge: Much to my regret I find myself unable to concur in the prevailing opinion.

The goods imported are mosaics made of bits of colored glass, the product of the glassmaker. The mosaics and the form and color given to them are admittedly the conception and the work of an artist of high order. When completed the mosaics make their appeal to the emotions only and apparently have no utilitarian purpose whatever. They are not the concept or the work of an artisan, but are the offspring of the imagination of the artist and are designed and made up under the exclusive supervision and control of the artist. The glassmaker made and colored the glass. The artisan shaped the pieces of glass and put them in place. The coloring, shaping, and placing of the pieces was, however, controlled, supervised, and wholly determined by the artist and not by the glassmaker or artisan.

The testimony is positive and uncontradicted that the mosaics in issue are the productions or reproductions of a fine art painter and that the process of making them is identically the same as putting specks of color on a piece of canvas with a brush. Indeed, the mosaics are so much the production of the artist painter that they are known and called mosaic paintings.

The importations are works of the free fine arts of which painting in oils, water colors, or pastel, is typical and, as I see it, are works of art as that designation has been repeatedly defined by this court. See *United States* v. *Baumgarten & Co.*, 2 Ct. Cust. Appls. 321, 322, 323, 324; *Stern* v. *United States*, 3 Ct. Cust. Appls. 124, 125, 127, 128; *United States* v. *Godwin's Sons*, 3 Ct. Cust. Appls. 226, 228; *Warren & Wetmore* v. *United States*, 3 Ct. Cust. Appls. 461, 462, 463; *Downing & Co.* v. *United States*, 3 Ct. Cust. Appls. 473; *United States* v. *Olivotti & Co.*, 7 Ct. Cust. Appls. 46, 48, 49; *Reardon* v. *United States*, 11 Ct. Cust. Appls. 233, 236, 237. To be a work of art a thing must be conceived, designed, produced, or reproduced by an artist or under his immediate supervision and control. See *Merritt* v. *Tiffany*, 132 U. S. 167, 170, 171.

The decisions of this court as to what constitutes a work of the fine arts are clearly supported by the article on the fine arts written by Sidney Colvin, LL. D., for the Encyclopædia Britannica. See Fine arts, Encyclopædia Britannica, Vol. X, p. 365. Doctor Colvin unmistakably declares that the painter's craft is not confined to the making of pictures in fresco, oil, distemper, or water color on an opaque surface, but includes *the fitting together of a multitude of solid cubes or cylinders so that their united surface forms a picture to the eye, as in a mosaic.* He defines the art of painting as a shaping or space art, the business of which is to express and arouse emotion by the

imitation of all kinds of natural objects, reproducing on a plane surface the relations of their boundary lines, lights and shadows, or colors, or all three of these appearances together. (Encyclopædia Britannica, Vol. X, p. 365.

In *Petry Co.* v. *United States*, 11 Ct. Cust. Appls. 525, there was no evidence that the mosaic pictures there involved were produced by a painter or artist or that they were anything more than the work of an artisan. I think, therefore, that that case can not be regarded as any authority whatever for the conclusion that mosiacs produced or reproduced by a painter and conceived, designed, colored, and formed by him are not works of the fine arts. Indeed, Judge Martin carefully limited his decision to mosiac articles like those submitted to him and expressly stated that the conclusions reached by him did not necessarily apply to *every possible picture into which stone* may enter as a component material.

I am of the opinion that the judgment of the United States Customs Court should be reversed.

BLAND, Judge, concurs in this dissent.