The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* HENSEL, BRUCKMANN & LORBACHER (No. 3320)[1]

United States Court of Customs and Patent Appeals, December 19, 1930

*Charles D. Lawrence,* Assistant Attorney General (*Marcus Higginbotham* and *Ralph Folks,* special attorneys, of counsel), for the United States.
*Comstock & Washburn (J. Stuart Tompkins* of counsel) for appellee.

[Oral argument October 13, 1930, by Mr. Folks and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, holding that two large candelabra composed of glass, copper, and brass, plated with gold, were dutiable as works of art at 20 per centum ad valorem under paragraph 1449 of the Tariff Act of 1922.

PAR. 1449. Works of art, including paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same; statuary, sculptures, or copies, replicas, or reproductions thereof; and etchings and engravings; all the foregoing, not specially provided for, 20 per centum ad valorem.

The merchandise was assessed for duty by the collector at the port of Chicago as articles, not specially provided for, plated with

gold, at 60 per centum ad valorem under paragraph 399, the pertinent part of which reads:

PAR. 399. Articles or wares not specially provided for, if composed wholly or in chief value of platinum, gold, or silver, and articles or wares plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 60 per centum ad valorem; * * *

On the trial in the court below, the witness, Fred R. Springer, testified for the importer. He said that he was a representative of the Galvano-Plastic Co. of Stuttgart, Germany; that the candelabra in question were reproduced by his company from a candelabrum made by Professor Rigotti, "an architect and sculptor"; and that they were reproduced by the galvano-plastic process, which the witness described in the following language:

They make first plaster casts of the original model and then they prepare negative forms with a certain material, which I do not know what they use, and these negative forms they put in the galvano-plastic bath to get the pure copper deposits. Then later, of course, they would make that into one piece. They have to make it in several pieces, and these pieces they have to put together; later soldering it with copper, *and then they have to make a refinish form, and for this process they have their artists.* [Italics ours.]

The witness further testified that the cost of reproducing the imported candelabra, including the wiring necessary to make them lighting fixtures, was $550 each; and that they were installed in the upper lobby of a theater for lighting and ornamental purposes. He testified that he was an "architect" and had studied art; that, although he had never studied sculpture, he had "visited the University of Munich"; that the imported articles were replicas; and that the workmen who reproduced them by the galvano-plastic process were artists.

The witness, A. C. Rindskopf, testified for the importer. With regard to his qualifications as a witness on the subject of art, he said:

A. Well, I have designed the decorations in many buildings, banks, clubs, and hotels. I have designed furniture and lighting fixtures, wrought iron. I have designed practically all materials of wrought iron and cast iron, and malleable iron; and marble, plaster, and practically all materials, including glass, mosaics. I am a general decorative designer.

Q. Are you a graduate of any college?—A. The Pennsylvania Museum, School of Industrial Art, in Philadelphia, where I have worked. I do not consider that any great recommendation.

He had never seen the imported articles but when shown a photograph of one of them—illustrative Exhibit A—testified as follows:

A. I regard that truly as a work of art.

Q. Why?—A. To begin with, it is beautiful in design; it required an artist to conceive it, and it required an artist to execute it, and if you made one or a hundred it would take an artist to carry a thing like that out, I should say.

Q. Have you ever seen any piece of candelabra that assimilates or closely resembles that particular piece?—A. I can't say that I have seen many candelabra.

I can't say I have seen any exactly like it. I have seen many candelabra that had features that this has.

## Continuing his testimony, he said:

Q. Do you distinguish between a work of art as made by one individual person and a so-called work of art which is the result of the labor of a number of people, such as silver platers, or gold platers, and electric wiremen and mechanics? Do you distinguish between those two classes?—A. I would say that mechanics who would wire a thing of this kind would hardly be considered as artists; but I would consider them as mechanics. The man who chased this required artistic ability; perhaps not the same artistic ability as the man who conceived and made the original model, but it required artistic ability, because in chasing this and finishing this complete—because if they are not finished they will make a blunder and spoil the work; so they are not artists.

Q. By chasing you mean engraving?—A. Yes; they work over it with tools.

Q. Do you consider all engravers to be artists?—A. Not all engravers; no. There are some that are far from artists.

Q. Would you be able to give an opinion on a so-called work of art as well from the photograph as from the original itself?—A. I don't think I would.

Upon this record the court below held that the imported articles were works of art and dutiable as such under paragraph 1449, and sustained the protest.

Counsel for the Government contend that the imported articles are not works of art within the purview of paragraph 1449; and that the issues here presented are controlled by the decisions of this court in the following cases: *United States* v. *Olivotti & Co.*, 7 Ct. Cust. Appls. 46, T. D. 36309; *Petry Co.* v. *United States*, 11 Ct. Cust. Appls. 525, T. D. 39666.

In the *Olivotti & Co.* case, *supra*, this court held that paragraph 376 of the Tariff Act of 1913 was not intended to cover the "whole range of the beautiful and artistic, but only those productions of the artist which are something more than ornamental and decorative and which may be properly ranked as examples of the free fine arts"; and that a marble font and marble seats produced by a professional sculptor, but only incidentally embellished with artistic carvings, were not sculpture nor works of art under the paragraph. In its discussion of the subject, the court, in an opinion by the late Judge Smith, among other things, said:

* * * The potter, the glassmaker, the goldsmith, the weaver, the needle-woman, the lace maker, the woodworker, the jeweler, all produce things which are both artistic and beautiful. It can hardly be seriously contended, however, that it was the legislative purpose to include such things, beautiful and artistic though they may be, in a provision which, as shown by its history and the enumeration therein contained, was intended to favor that particular kind of art of which painting and sculpture are the types. See *Lazarus* v. *United States*, 2 Ct. Cust. Appls. 508, 509, T. D. 32247; *United States* v. *Downing*, 6 Ct. Cust. Appls. 545, T. D. 36197.

Paragraph 376 of the Tariff Act of 1913 was again before this court in the *Petry Co.* case, *supra*, and the decision in the *Olivotti Co.* case was carefully reviewed and approved.

In the case of *Frei Art Glass Co.* v. *United States*, 15 Ct. Cust. Appls. 132, T. D. 42214, this court, in construing paragraph 1449 of the Tariff Act of 1922, reviewed and approved the decisions in the *Olivotti Co.* and *Petry Co.* cases, *supra*, and, in an opinion by Graham, P. J., among other things, said:

> While it may seem incongruous to hold that things which are in fact works of art are not so in a tariff sense, the apparent reason therefor lies in the manifest intent of Congress to admit at a low rate of duty artistic works representative of the fine arts such as paintings and sculptures, and at the same time to protect the American producers of such articles as belong to the decorative and industrial arts. The idea is fully stated in the opinion in *Lazarus* v. *United States*, *supra*.
>
> Paragraph 376 of the Tariff Act of October 3, 1913, was repeated in substantially the same language in paragraph 1449 of the Tariff Act of 1922. While the opinion in the *Petry* case had not been handed down prior to the passage of the said act of 1922, the Congress must be held to have known of the limitation placed upon the meaning of the statutory term "works of art" by this court and the Supreme Court before that time. Having made no substantial change of language, we must presume the Congress assented to the interpretation. *United States* v. *Brown & Co.*, 13 Ct. Cust. Appls. 3; *United States* v. *Basket Imp. Co.*, 13 Ct. Cust. Appls. 98; *United States* v. *Beierele*, 1 Ct. Cust. Appls. 457; *Shallus* v. *United States*, 1 Ct. Cust. Appls. 556.

Counsel for the importer, entirely overlooking our decision in the *Frei Art Glass Co.* case, argues that, as the court in the *Olivotti Co.* and *Petry Co.* cases did not consider the provisions of paragraph 1449, *supra;* but, on the contrary, construed the provisions of a paragraph—376—of a prior tariff act, those decisions ought not to be given controlling effect.

In the Summary of Tariff Information, 1920, prepared for the Ways and Means Committee of the House of Representatives, the Tariff Commission not only called attention to the decision in the *Olivotti Co.* case, but quoted at length from it. With this information before it, the Congress reenacted paragraph 376 of the Tariff Act of 1913, without any material change of language, as paragraph 1449 of the Tariff Act of 1922. Accordingly, as we said in the *Frei Art Glass Co.* case, *supra*, the Congress must have intended to approve this court's construction of the language of paragraph 376, *supra*.

The witness, Springer, said that the imported articles were reproduced from an original executed by a professional architect and sculptor, but he did not say, and there is nothing in the record to indicate, that the original was sculpture.

There is nothing in the record from which it may be determined that the original candelabrum was a work of art. The witnesses did not testify that they had ever seen it or any other productions of Professor Rigotti. Nor are we able to say from an inspection of a

photograph of one of the involved articles that the original is an example of the free fine arts.

The mere fact that the involved articles are ornamental and decorative, is not sufficient to make them "works of art," as those words have been judicially defined.

We are of opinion that the principles announced in the *Olivotti Co.*, *Petry Co.* and *Frei Art Glass Co.* cases, *supra*, are controlling of the issues in the case at bar, and that the involved articles are not dutiable as "works of art" under paragraph 1449.

The judgment is *reversed*.