UNITED STATES *v.* JOHN WANAMAKER (No. 3365)[1]

United States Court of Customs and Patent Appeals, November 27, 1931

*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument October 13, 1931, by Mr. Folks and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding that certain "wool embroidered linen bands" were properly dutiable as works of art at 20 per centum ad valorem under paragraph 1449 of the Tariff Act of 1922, which reads:

PAR. 1449. Works of art, including paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same; statuary, sculptures, or copies, replicas, or reproductions thereof; and etchings and engravings; all the foregoing, not specially provided for, 20 per centum ad valorem.

The merchandise was assessed for duty by the collector at the port of Philadelphia as manufactures of wool, not specially provided for,

[1] T. D. 45336.

at 50 per centum ad valorem under paragraph 1119 of that act, which reads:

PAR. 1119. All manufactures not specially provided for, wholly or in chief value of wool, 50 per centum ad valorem.

It appears from the record that the involved articles are reproductions of the "Queen Mathilda tapestries," now in the Art Library at Bayeux, in Normandy. The original tapestries consisted of figures embroidered in various colors on linen bands and were, it seems, intended to represent the invasion of England by William the Conqueror in the year 1066. There is no evidence of record that they were produced by, or under the direction and supervision of, an artist. It does appear, however, that, in reproducing the involved articles from the original "Queen Mathilda tapestries," a Mr. Lambert, an artist residing in Paris, made a study and drawings of the figures and colorings in the original tapestries, and that, thereafter, linen bands were spread on frames and, from the drawings so made, the figures and designs were embroidered on them by three young ladies, professional painters and artists, under the supervision of the artist, Lambert. The merchandise was imported by appellee for decorative purposes only.

The witness, Howard L. Kratz, in charge of decorations for appellee, the only witness who testified for the importer, said that the original tapestries were considered a high work of art at the "time they were made, during the early centuries," and were now regarded as "a work of art." With regard to the involved articles, he said:

A. They are artistic in themselves, I should say, in my judgment. They are artistic in that they depict historical instances in the life of the French. We practically acquired that to capitalize a special feature in the house of Wanamaker, Philadelphia.

With regard to the use of the imported articles, the witness said:

A. We had a very ambitious series of drawings, our own plan, where we were going to have the feature consisting of a series of rooms, decorated in the Renaissance, and in connection with this these were to go around a particular room known as the Queen Mathilda room.

Q. What kind of a room was it to be?—A. A room for guests that patronized our restaurant.

In the case of United States v. Olivotti & Co., 7 Ct. Cust. Appls. 46, T. D. 36309, this court said:

Finding, as we do, that the font is not sculpture, the next question which arises is, Can it, because of its beauty and artistic character, be classified as a work of art within the meaning of paragraph 376? We think not. In our opinion, the expression "works of art," as used in paragraph 376, was not designed by Congress to cover the whole range of the beautiful and artistic, but only those productions of the artist which are something more than ornamental or decorative and which may be properly ranked as examples of the free fine arts, or possibly that class only of the free fine arts imitative of natural objects as the artist sees them,

and appealing to the emotions through the eye alone. The potter, the glassmaker, the goldsmith, the weaver, the needlewoman, the lace maker, the woodworker, the jeweler, all produce things which are both artistic and beautiful. It can hardly be seriously contended, however, that it was the legislative purpose to include such things, beautiful and artistic though they may be, in a provision which, as shown by its history and the enumeration therein contained, was intended to favor that particular kind of art of which painting and sculpture are the types. See Lazarus *v.* United States (2 Ct. Cust. Appls. 508, 509; T. D. 32247); United States *v.* Downing (6 Ct. Cust. Appls. 545; T. D. 36197).

In the case of *Frei Art Glass Co.* v. *United States*, 15 Ct. Cust. Appls. 132, T. D. 42214, it was held that certain so-called "mosaic paintings" were not dutiable as works of art under paragraph 1449, and, after reviewing a long line of decisions on the subject, the court, among other things, said:

> While it may seem incongruous to hold that things which are in fact works of art are not so in a tariff sense, the apparent reason therefor lies in the manifest intent of Congress to admit at a low rate of duty artistic works representative of the fine arts such as paintings and sculptures, and at the same time to protect the American producers of such articles as belong to the decorative and industrial arts. The idea is fully stated in the opinion in *Lazarus* v. *United States, supra.*

It is well settled that, in a tariff sense, the phrase "works of art" is limited to those artistic productions of the artist which are, in fact, examples of the free fine arts. *O. O. Friedlaender Co.* v. *United States,* 19 C. C. P. A. (Customs) 198, T. D. 45295, and cases cited therein.

There is no evidence in the case at bar that the "Queen Mathilda tapestries" were either produced by, or under the direction and supervision of, an artist. Stating it differently, there is nothing to show that, when finished, they represented the "realized sentiment of the artist." Accordingly, we are unable to hold that the "Queen Mathilda tapestries" are examples of the free fine arts. They may be regarded by some (the witness for the importer did not say by whom) as works of art; nevertheless, for aught that appears of record, they belong to the decorative and industrial arts, a class of merchandise which this court has held was not intended to be covered by paragraph 1449.

We do not intend to be understood as holding that paragraph 1449 is limited to the works of art enumerated therein. On the contrary, the paragraph is not so limited, but was intended to cover other examples of the free fine arts, not otherwise specially provided for. *Petry Co.* v. *United States*, 11 Ct. Cust. Appls. 525, T. D. 39666.

It not having been established that the original tapestries were works of art, in a tariff sense, the articles before us can not be held to be reproductions of "works of art," although they were produced under the direction and supervision of an artist. *O. O. Friedlaender Co.* v. *United States, supra.*

It appears that the merchandise was assessed for duty as manufactures in chief value of wool and, as there is nothing in the record to

establish that they are not in chief value of wool, we must hold that they were properly classified by the collector.

The judgment is *reversed*.