## MERRITT v. TIFFANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 60. Argued November 4, 1889. — Decided November 18, 1889.

The "professional productions of a statuary or of a sculptor only," as that phrase is used in the tariff act, (§ 2504 Rev. Stat. 2d ed. p. 478,) embraces such works of art as are the result of the artist's own creation,

or are copies of them, made under his direction and·supervision, or copies of works of other artists, made under the like direction and supervision, as distinguished from the productions of the manufacturer or mechanic.

This was an action to recover duties alleged to have been illegally exacted. Verdict for the plaintiff and judgment on the verdict. Defendant sued out this writ of error. The case is stated in the opinion.

*Mr. Solicitor General* for plaintiff in error.

*Mr. Edward Hartley* for defendant in error. *Mr. Walter H. Coleman* was with him on the brief.

Mr. Justice Field delivered the opinion of the court.

In 1880 and 1881, the plaintiff below, Charles L. Tiffany, imported from France and England various bronze statues and statuettes, which he claimed a right to enter, as statuary, on paying a duty of ten per cent ad valorem, but on which the collector charged a duty of forty-five per cent, as non-enumerated manufactures of copper. He was accordingly compelled, in order to obtain his goods, to pay $420.25 in excess of the ten per cent, which payment he made under protest, and appealed to the Secretary of the Treasury, who affirmed the decision of the collector. He then brought this action in the Supreme Court of New York, from which it was removed on *certiorari* to the Circuit Court of the United States for the Southern District of New York.

The plaintiff relied for recovery on the paragraph in "Schedule M, Sundries," contained in Title thirty-three of the Revised Statutes, "Duties upon Imports." That paragraph reads as follows:

"Paintings and statuary, not otherwise provided for: ten per centum ad valorem. But the term 'statuary,' as used in the laws now in force imposing duties on foreign importations, shall be understood to include professional productions of a statuary or of a sculptor only." Rev. Stat. 2d ed. 478, 479.

The collector claimed that the goods were subject to the

duty charged under the paragraph in "Schedule E, Metals," contained in the same title of the Revised Statutes. That paragraph reads as follows:

"Copper in rolled plates, called braziers' copper, sheets, rods, pipes and copper bottoms, and all manufactures of copper, or of which copper shall be a component of chief value, not otherwise provided for: forty-five per centum ad valorem." Rev. Stat. 2d ed. 467.

The articles imported were all made of copper, and fell under the general designation of "manufactures of copper," or of "manufactures of which copper is a component of chief value," subject to a duty of forty-five per cent ad valorem, as charged by the collector, unless provision for a different duty on articles of that character is made in some other clause of the statute. There is no other clause applicable to them, unless they come under the head of "statuary," as defined by Congress. That definition, as seen above, includes the "professional productions of a statuary or of a sculptor only." What productions are to be deemed professional productions of a statuary or a sculptor it is difficult to state in general terms, so as to embrace every article of the kind. It is sufficiently accurate, however, for this case, to say that the definition embraces such works of art as are the result of the artist's own creation, or are copies of them, made under his direction and supervision, or copies of works of other artists, made under the like direction and supervision, as distinguished from the productions of the manufacturer or mechanic. The definition does not limit the professional productions to those of the sculptor's creation. As said in *Tutton* v. *Viti*, 108 U. S. 312, 313: "An artist's copies of antique master-pieces are works of art of as high a grade as those executed by the same hand from original models of modern sculptors."

The articles in question in this present case were reproductions of noted figures, and, with the exception of the two Roman Gladiators by Guillemin, were all made by manufacturers or mechanics. A model of a figure being prepared, any number of copies can be cast from it without any aid of the sculptor. One of the witnesses in the case testified that he had

been employed in New York City for eleven years in the manufacture of bronze statuettes ; and that the company with which he was connected manufactured about forty thousand figures a year, varying in size from ten inches to thirty-six and thirty-nine inches, some similar to, and some larger than, the sample produced.

Another witness, who stated that he had been familiar with the process of manufacturing statues for twenty years, testified that the men who do the work of casting are skilled mechanics; that a model of a figure can be made so as to produce any number of copies; and that the process is purely mechanical.

The testimony of Léon Barré, who purchased the articles for the plaintiff, is instructive. He had been salesman and buyer for him for sixteen years, and had purchased in Europe bronze statues for him since 1880. He thus testified :

" The method of production of bronze statuary abroad is as follows : The artist or statuary first conceives a design ; he puts it on paper; he studies his subject historically, and then makes a clay model; from that clay model he makes a plaster one which he either sells to a founder or reproducer, who is technically called an editor, or else he edits it himself. . . . The editor must for the purpose of reproduction either use the clay or plaster model of the statuary. That was so here. I find next two Roman Gladiators on this invoice. The original model of that was made by Guillemin and edited by him, and manufactured under his immediate personal supervision. He is a well known sculptor and statuary, and these are his professional productions. I find next the statues of Penelope, Madeline and the Retour des Champs, and busts of Delilah and Shakespeare. The busts are cast by Barbedienne. He is the most noted founder of bronze statuary. The others are cast by David, who is also a superior founder. I don't know what artist made the original clay models in these cases. I find also on the invoice a Vénus de Milo, and Mercury, and David before the Combat, and a Bernard Palissy, all cast by Barbedienne. The original artist is unknown to me. Barbedienne is a maker of statues. When a sculptor has produced his clay model, unless he is himself an editor, he expends no

further work on the subject; but all subsequent processes of founding, chasing and finishing are done by the editor. This is artistic work. There is another way of making bronze statuary, but the statues in this suit were made as I have stated. . . . In all cases of editing it is absolutely necessary for the editor to have and use the model of a sculptor." Upon cross-examination this witness gave further evidence tending to show that, with the exception of Guillemin referred to, the only other sculptor is Basset; all the others are editors. The witness states: "I know Basset to be a sculptor; I have seen his models. He did not make the models for the Love and Flora. Any number of reproductions in bronze can be made from the artist's model without any further work of the sculptor."

The evidence thus given by different witnesses was sufficient to justify the defendant in asking the court to instruct the jury that, "If they find from the evidence that the imported articles were made, not by professional sculptors or statuaries, or by their assistants under their direction, but were made by skilled workmen or mechanics in the employ of the manufacturer, then their verdict should be for the defendant." This instruction the court refused, to which refusal counsel excepted. In its ruling in this respect, we think the court erred. Under the instruction the jury might possibly have found that some of the articles, like the Roman Gladiators, were the productions of a statuary or a sculptor, within the meaning of the statute, while excluding others.

*The judgment must therefore be reversed and the cause remanded for a new trial; and it is so ordered.*