## UNITED STATES *v.* GODWIN'S SONS (No. 825).[1]

BRONZE ARTICLES ARTISTICALLY FASHIONED.

> The articles were bronze knockers fashioned after the human figure and bronze busts and statuettes, together with bases made expressly for these. The uncontradicted testimony of the maker of the articles is to the effect his work on them was that of an artist rather than as an artisan; that he employed his professional skill in their production. The importations are dutiable under paragraph 454, tariff act of 1897.

### United States Court of Customs Appeals, May 8, 1912.

APPEAL from Board of United States General Appraisers, Abstract 27215 (T. D. 32046).

[Affirmed.]

*William K. Payne,* Deputy Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Leland N. Wood,* assistant attorney, on the brief), for the United States.

*Walden & Webster* (*Howard T. Walden* of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case was imported under the tariff act of 1897, and consists of a bronze knocker fashioned after a

---

[1] Reported in T. D. 32538 (22 Treas. Dec., 863).

human figure, and certain bronze busts and statuettes, together with bases made expressly for the same.

The collector classified the articles as manufactures of metal, and assessed them with duty at 45 per cent ad valorem under paragraph 193 of the act.

The importers protested against that assessment, and contended that the importations were statuary within the meaning of paragraph 454 of the act, and were therefore dutiable at 15 per cent ad valorem under that paragraph and the terms of the reciprocal agreement with Italy.

The protest was heard upon evidence by the Board of General Appraisers and was sustained. The Government now applies for a reversal of that decision.

The paragraphs above named are as follows:

193. Articles or wares not specially provided for in this act, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum or other metal, and whether partly or wholly manufactured, forty-five per centum ad valorem.

454. Paintings in oil or water colors, pastels, pen and ink drawings, and statuary, not specially provided for in this act, twenty per centum ad valorem; but the term "statuary" as used in this act shall be understood to include only such statuary as is cut, carved, or otherwise wrought by hand from a solid block or mass of marble, stone, or alabaster, or from metal, and as is the professional production of a statuary or sculptor only.

It will be observed that paragraph 454 includes only such statuary as is cut, carved, or otherwise wrought by hand from a solid block or mass of marble, stone, or alabaster, or from metal, and is the professional production of a statuary or sculptor only. The contention of the importers is that the importations came within that description; the contention of the Government is that they did not.

The only witness in the case was the owner of the articles in question. His testimony was not contradicted by any other evidence, and the board accepted it as correct. His testimony was to the effect that he is a professional sculptor with a studio in Rome; that the articles in question were made by himself in his studio, with the aid of assistants who were also professional sculptors, working under his immediate direction; that the articles were first modeled by him in clay, from which successive molds were taken, from which in turn wax models were taken; that bronze castings were thereupon made by the use of the wax models, which castings produced the desired forms, but were yet entirely covered with metallic crust; that a workman with a chaser and files cut the irregular pieces from the castings; that thereafter the witness, with very tiny tools, remodeled all the edges, going over the entire surface, developing the anatomy of the figures; that the articles were thereupon fired under the personal care of the witness, who then took an art glass and went over them gradually with very fine sandpaper. All of these processes

were had either by the personal action of the witness or by his professional assistants under his immediate direction in order to give the material the form and color which the finished articles possess.

There were no exhibits placed in evidence at the hearing before the board. An article was mentioned as an exhibit "for identification," but it was not formally introduced in evidence. It was therefore not made part of the record, and is not now before the court.

Upon the testimony, of which the foregoing is an outline, the board held that the importations were statuary within the meaning of paragraph 454, and entitled to the assessment of 15 per cent ad valorem.

The Government, however, contends that the work done upon the articles by the witness, as shown by his testimony, was hardly more than "chasing," or "slightly touching them up," and that such work was of an ordinary character, and did not constitute the articles the professional productions of the witness, wrought by hand from the metal bronze.

It must be confessed that the proof in support of the professional character of the articles, and the work of the witness upon them, is somewhat meager; nevertheless, giving the testimony the favorable construction to which it is entitled under the circumstances, it seems to be sufficient to sustain the board's decision. The personal exertion bestowed by a professional artist upon a bronze figure, after casting, might not be laborious nor greatly alter the bulk of the article, and yet it might give the piece its artistic spirit and character; and this may fairly be inferred concerning the present case, especially in view of the fact that the artist began with the first modeling of the productions, and personally directed all the labor bestowed upon them up to their finished condition. The relation of the witness to the articles throughout seems to have been that of an artist rather than an artisan, and was within the line of his profession.

Another assignment of error presented by the Government may be briefly considered. The importers moved for the incorporation in the record of the testimony taken in a former case upon a similar issue. However, no copy of that testimony was tendered by the importers, and because of that fact the board overruled the motion. The Government contends that, notwithstanding that decision of the board, both the board and the importers proceeded in the case as if the former testimony had been in fact added to the record in the present case. This is assigned as error.

However, this assignment does not seem to the court to be well taken. At the hearing, when it was found that the former testimony was not at hand, and therefore could not be incorporated in the present record, the importers proceeded with a more extended examination of the witness, so as to cover the same subject by his present testimony, and the decision of the board upon the facts was founded upon that testimony alone. The reference made to the former case, in the

board's decision of the present case, is not an adoption of the testimony heard in that case, but rather a citation of the principles therein decided.

The court therefore concludes that no error is apparent in the record, and the decision of the board is *affirmed*.