WARREN & WETMORE *v.* UNITED STATES (No. 933).[1]

MANUFACTURES OF MARBLE—SCULPTURES.

It was not shown that the articles were the production of a sculptor, and though they were carved representations in marble of artistic subjects, they were not dutiable as sculptures. They were properly assessed as manufactures of marble under paragraph 112, tariff act of 1909.—United States *v.* Baumgarten (2 Ct. Cust. Appls., 321; T. D. 32052) distinguished.

United States Court of Customs Appeals, December 16, 1912.

APPEAL from Board of United States General Appraisers, Abstract 28755 (T. D. 32584).

[Affirmed.]

*Churchill & Marlow (William A. Hines* of counsel) for appellants.

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *William K. Payne,* Deputy Assistant Attorney General, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Four oval carved marble panels, representing Spring, Summer, Autumn, and Winter, and four rectangular carved marble panels,

representing Flora, Bacchus, Neptune, and Ceres, were classified, with their accompanying carved marble swags and bows, as manufactures of marble.    The collector of customs at the port of New York accordingly assessed them for duty at 50 per cent ad valorem under the provisions of paragraph 112 of the tariff act of 1909, which paragraph, in so far as it is pertinent, reads as follows:

112. Marble, breccia, onyx, alabaster, and jet, wholly or partly manufactured into monuments, benches, vases, and other articles, * * * fifty per centum ad valorem.

The importers protested that the collector's classification of the merchandise was incorrect and set up the claim that the marble panels, swags, and bows were dutiable as sculptures at 15 per cent ad valorem under that part of paragraph 470, which reads as follows:

470. Paintings in oil or water colors, * * * and sculptures, not specially provided for in this section, fifteen per centum ad valorem; but the term "sculptures" as used in this act shall be understood to include only such as are cut, carved, or otherwise wrought by hand from a solid block or mass of marble, stone, or alabaster, or from metal, and as are the professional production of a sculptor only, * * *.

The merchandise was returned by the appraiser as "manufactures of marble," and this return was confirmed by the deputy appraiser, who reported to the collector that in his opinion the importation consisted of manufactures of marble which were not works of art or sculptures.

On the hearing before the Board of General Appraisers the importers introduced testimony showing that the panels and the ornamental swags and bows on which they rested were carved marble and that the panels were carved into a representation of allegorical forms and figures.    No evidence was offered or introduced, however, establishing or tending to establish that the panels or the swags or the bows were the professional production of a sculptor only.    The importers did attempt to prove by the Government examiner, an admitted expert in art, that the importation was of an artistic merit equal to that of the vase involved in the case of United States v. Baumgarten (reported in 2 Ct. Cust. Appls., at p. 321; T. D. 32052).    As that testimony, even if it had been admitted in evidence, would have established at best nothing more than that the carved mantels under discussion were highly artistic in character, we do not see just how it would be possible to deduce from it the conclusion that the carvings were the "professional production of a sculptor only."    From the fact that a true sculpture is artistic it does not follow at all that every artistic production in stone or metal is the work of a sculptor.    The goods in controversy are carved marble, and they may be fully as artistic as those involved in the Baumgarten case.    Nevertheless, upon the fact that they are carved marble and artistic there can not be builded the presumption that they are any more the work of the professional sculptor who originates than of the skilled ornamentalist or stone

carver who merely makes a mechanical copy. The carved marble vase which was the subject of controversy in the Baumgarten case was a copy, it is true. It was, however, a copy executed by a sculptor of ability and reputation, ranking as one of the highest and best artists in Italy. More than that, it was a copy stamped with so much of the originality and individuality of the sculptor who chiseled it that the connoisseur could readily recognize it as that particular sculptor's handiwork. Such a composition is entitled to be classed as a sculpture, and is something more than the mechanical facsimile or reproduction of the skilled artisan. In this case the importation was proved to be the carved representation in marble of artistic subjects, but whether the carvings were the production of the sculptor, the ornamentalist, or the skilled stone carver was not established. While, therefore, the importers did claim in their protest that the carved panels and attendant ornaments imported by them were the professional work of a sculptor, they failed on the hearing to prove that claim by competent evidence. With that as the state of the case before it, the board had no other recourse than to sustain the collector, and, in our opinion, the protest of the importers was properly overruled.

The decision of the Board of General Appraisers is *affirmed.*