(C.D. 2175)

Margaret Silberman *v.* United States

United States Customs Court, Third Division

(Decided May 4, 1960)

*Elliott L. Hoffman* for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

DONLON, Judge: This suit concerns the customs classification of an article included in an importation which the importer described, in the entry documents, as one case containing original paintings. The importer claimed that the entire importation was exempt from duty under paragraph 1807 of the Tariff Act of 1930.

Only one of the several articles included in the entered case is involved in this litigation. The other articles were pencil and crayon drawings, the work of the artist Picasso, which the collector admitted duty free under paragraph 1807, and two wood picture frames which the collector classified as manufactures of wood and assessed with duty at 15 per centum ad valorem under paragraph 412.

The entry article that is before us now was described in the invoice, filed with the entry documents, as a Picasso mosaic composition. Following long-standing administrative practice and several court decisions which, over a period of years, have construed the tariff classification appropriate for mosaics, the collector, accepting plaintiff's description of the article as a mosaic composition, classified this import under paragraph 218(f) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as an article of colored glass, not specially provided for, dutiable at 30 per centum ad valorem.

Plaintiff's protest recites three alternative claims, as follows:

1. For classification under paragraph 1807, free of duty.

2. For classification under paragraph 1547, at an "effective" duty rate, not specified.

3. If classification under paragraph 218 should be held the proper statutory classification of this article, then that duty should be assessed on the value of the materials of the importation, and not on the value at which the article was entered and appraised.

We shall first dispose of this third claim.

Plaintiff cites no law in support of the third claim but in her brief she refers, as to this point, only to a newspaper article.

Without deciding at this moment what the appropriate duty classification of this mosaic is, we point out that plaintiff entered it at a value of $4,514. Whatever else the collector did or did not do, at least he accepted the plaintiff's valuation. Plaintiff did not appeal for reappraisement. Therefore, the appraised valuation (identical with entry valuation) has now become final for duty purposes. Sections 501, 503, Tariff Act of 1930, as amended.

These statutory provisions are not enforceable according to the whim or caprice of a collector, as plaintiff's brief appears to assert. These are provisions which Congress has enacted and which the collector has no alternative save to enforce. It is Congress that makes the law.

Plaintiff's third protest claim is without merit, and it is overruled.

We proceed now to consideration of plaintiff's first and second claims.

Plaintiff's first claim is that this mosaic is such an original work of art as Congress includes within the free entry provision of paragraph 1807, Tariff Act of 1930. The 1959 amendment to paragraph 1807, mentioned by counsel in both briefs, is not effective with respect to this importation. Congress provided, in precise language, that the 1959 amendment was to be effective with respect to merchandise entered, or withdrawn from warehouse for consumption, on or after the 30th day after September 14, 1959. Public Law 86–262, 2(b), 73 Stat. 549. It is paragraph 1807 as it was prior to the 1959 amendment, on which plaintiff's first claim rests.

Plaintiff's second claim is for classification as such a work of art as Congress intended to include within the dutiable provisions of paragraph 1547. Plaintiff does not say on which of the several duty provisions of paragraph 1547 (as amended, or as modified from time to time, and effective in March 1958, when this article was entered) her paragraph 1547 duty claim rests.

The relevant provisions are as follows:

PAR. 1807. Original paintings in oil, mineral, water, or other colors, pastels, original drawings and sketches in pen, ink, pencil or water colors, artists' proof etchings unbound, and engravings and woodcuts unbound, original sculptures or statuary, including not more than two replicas or reproductions of the same; but the terms "sculpture" and "statuary" as used in this paragraph shall be understood to include professional productions of sculptors only, whether in

round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, or metal, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, or alabaster, or from metal, or cast in bronze or other metal or substance, or from wax or plaster, made as the professional productions of sculptors only; and the words "painting," "drawing," "sketch," "sculpture," and "statuary" as used in this paragraph shall not be understood to include any articles of utility or for industrial use, nor such as are made wholly or in part by stenciling or any other mechanical process; and the words "etchings," "engravings," and "woodcuts" as used in this paragraph shall be understood to include only such as are printed by hand from plates or blocks etched or engraved with hand tools and not such as are printed from plates or blocks etched or engraved by photochemical or other mechanical processes.

PAR. 1547. (a) Works of art, including (1) paintings in oil or water colors, pastels, pen and ink drawings, and copies, replicas, or reproductions of any of the same, (2) statuary, sculptures, or copies, replicas, or reproductions thereof, valued at not less than $2.50, and (3) etchings and engravings, all the foregoing, not specially provided for, 20 per centum ad valorem.

Paragraph 1547(a) was modified by the General Agreement on Tariffs and Trade, T.D. 51802, and again by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373.

The GATT modification is as follows:

[Par. 1547(a) (1) and (3)] Works of art, not specially provided for:
Paintings in oil or water colors, pastels, pen and ink drawings,
and copies, replicas, or reproductions of any of the same_____ 10% ad val.
Etchings and engravings_____ 10% ad val.

The Annecy modification is as follows:

[Par. 1547(a) (2)] Works of art, not specially provided for:
Statuary, sculptures, or copies, replicas, or reproductions
thereof, valued at not less than $2.50_____ 10% ad val.

Paragraph 218(f), the provision under which the collector classified the importation with duty at 30 per centum ad valorem, as that paragraph was modified by the General Agreement on Tariffs and Trade, T.D. 51802, is in relevant part as follows:

Table and kitchen articles and utensils, and all articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), painted, printed in any manner, sandblasted, silvered, stained, or decorated or ornamented in any manner * * *

*        *        *        *        *        *        *

Other_____ 50¢ on each article or utensil, but not less than 30% nor more than 50% ad val.

The mosaic composition was exhibited in court. With the consent of the court, and because of its value, the original work was released

to plaintiff after view. There are now before us two photographs of the mosaic. (Exhibit 1.)

The testimony of plaintiff's witnesses established that this is a mosaic in color; that it is the work of Pablo Picasso; and that, in the opinion of witnesses qualified to express opinions as to artistic merit, it is an artistic expression, typical of Picasso's work, and a work of free fine art.

Testimony on other points is not so clear.

While plaintiff endeavored to establish that the method of mosaic composition is similar to the method of painting, this similarity was not shown. In fact, one of plaintiff's experts said that this mosaic was not, in his opinion, a painting.

Defendant tried to establish that a mosaic is not a work of art if an ordinary laborer applies the glass and stones over the artist's design. But there was no testimony that any ordinary laborer worked on this Picasso mosaic, and it appeared that the artist sometimes himself applies the glass pieces and stones.

We hold, on the record before us, that this is a mosaic composition in color, the work of the artist Pablo Picasso, and a work of art.

The difficulty with plaintiff's paragraph 1807 claim, a difficulty which counsel recognizes, is that Congress has there granted the privilege of duty free entry only to certain enumerated forms of art. Unless this is a painting, it is hard to see what provision of paragraph 1807 would entitle it to duty free entry. On the weight of evidence before us, it is not a painting.

Plaintiff argues that the 1959 amendment to paragraph 1807 is merely declaratory of what the law was before that date. We do not think so. Indeed, Congress itself said that the amendment was *not* to apply to importations prior to October 14, 1959, and this clear expression of congressional intent may not be reconciled with the interpretation of the amendment which plaintiff urges on us.

In *Peters* v. *United States*, 41 Cust. Ct. 195, C.D. 2042, we held that a collage was not entitled to free entry under paragraph 1807. In view of the express provision in the 1959 amendment for collages which are works of art, the rule would be otherwise for the *Peters* collage if it were imported after October 13, 1959.

Plaintiff's first claim is overruled.

Plaintiff's second claim, for dutiable entry as a work of art under paragraph 1547, presents a somewhat more difficult problem both as to the facts and the law. There has been considerable litigation concerning mosaics.

The principal cases involving mosaics during the past 35 years or thereabouts are, in chronological sequence, *Petry Co.* v. *United States*, 11 Ct. Cust. Appls. 525 (1923) ; *Frei Art Glass Co.* v. *United States*, 15 Ct. Cust. Appls. 132 (1927) ; and *United States* v. *Columbo*

*Co.*, 21 C.C.P.A. (Customs) 177 (1933). It is defendant's contention that when Congress enacted the Tariff Act of 1930, it did so in the knowledge that our appeals court had held that a mosaic is not a work of art *for tariff purposes* even though it may in fact be a work of art, and that it was classified instead for tariff purposes, as an article of glass not specially provided for. Since Congress had this knowledge, and again enacted in the Tariff Act of 1930 the identical provision that had been so construed, defendant argues that this constituted the legislative adoption of the judicial interpretation.

We are of opinion that this Picasso mosaic is a work of art and that paragraph 1547 embraces works of art, not specially enumerated. It is necessary, therefore, to review those cases on which defendant relies.

In the *Petry* case, earliest of the three cases cited, *supra*, the article involved was described by the court as "a picture composed of marble mosaics inclosed in an elaborate gilt frame." Assessment of duty was at the rate of 45 per centum ad valorem, as a manufacture of marble. The importer claimed classification as a work of art under paragraph 376, which was the counterpart, in the Tariff Act of 1913, of paragraph 1547 of the Tariff Act of 1930.

Because of the thorough review, in the *Petry* opinion, of the historical development of the duty status of mosaics, we quote from that opinion rather fully, as follows:

The present question, therefore, is whether the imported picture should be assessed with duty at the rate of 45 per cent ad valorem as a manufacture of marble under paragraph 98 or at the rate of 15 per cent ad valorem as a work of art under paragraph 376, tariff act of 1913. It can not be disputed that the article answers to the description of a manufacture of marble, but if it may also be classified as a work of art under paragraph 376 it should be assessed with duty under that paragraph, since the provisions thereof are clearly more specific than those of the competing paragraph. The final question in the case, therefore, is whether the importation comes within the provisions of paragraph 376. The following is a copy of that paragraph:

376. Works of art, including paintings in oil or water colors, pastels, pen and ink drawings, or copies, replicas, or reproductions of any of the same, statuary, sculptures, or copies, replicas, or reproductions thereof, and etchings and engravings, not specially provided for in this section, 15 per centum ad valorem.

We think that the word "including," as used in the foregoing paragraph, is a term of specification and definition rather than of exclusion. Accordingly, the paragraph may include works of art such as those mentioned by name in it, and also such as are ejusdem generis therewith and not otherwise provided for in the act. No article of the latter class, however, can come within the paragraph, unless it be a "work of art" in the tariff sense, and we do not think that marble mosaic pictures answer to that description. In United States *v.* Olivotti & Co. (7 Ct. Cust. Appls. 46; T.D. 36309), the following comment upon paragraph 376 was written by Judge Smith for this court:

In our opinion the expression "works of art," as used in paragraph 376, was not designed by Congress to cover the whole range of the beautiful and

artistic, but only those productions of the artist which are something more than ornamental or decorative and which may be properly ranked as examples of the free fine arts, or possibly that class only of the free fine arts imitative of natural objects as the artist sees them, and appealing to the emotions through the eye alone. The potter, the glassmaker, the goldsmith, the weaver, the needlewoman, the lace maker, the woodworker, the jeweler, all produce things which are both artistic and beautiful. It can hardly be seriously contended, however, that it was the legislative purpose to include such things, beautiful and artistic though they may be, in a provision which, as shown by its history and the enumeration therein contained, was intended to favor that particular kind of art of which painting and sculpture are the types. See Lazarus *v.* United States (2 Ct. Cust. Appls. 508, 509; T.D. 32247) ; United States *v.* Downing (6 Ct. Cust. Appls. 545; T.D. 36197).

We think that mosaic articles, while often beautiful and artistic, are the fabrications of artificers rather than the productions of artists, and are not within the domain of the fine arts as above defined. This view finds support in the well-known uses to which such work is commonly applied. It serves generally as an architectural ornament for the decoration of the ceilings, walls, or floors of churches or other public edifices, or in the manufacture of costly furniture or jewelry. That fact is recognized by the accepted definitions of the word "mosaic." The word is defined by the Standard Dictionary as follows:

Mosaic. 1. A kind of tesselated or inlaid work composed of bits, squares, or cubes of stone, glass, enamel, etc., combined so as to form an artistic pattern for wall decoration or pavements, and used also for other purposes, as for table tops or jewelry. 2. A piece of inlaid work of this kind.

It is probably true that mosaic pictures like the present one are more nearly allied than other mosaic articles to works of art such as are specified in paragraph 376. In a sense, they resemble "paintings in oil or water colors," inasmuch as they artistically depict scenes and persons in such a manner as to please the eye and excite the emotions of observers. Nevertheless they have not been admitted into the tariff classifications of "works of art." This statement is sustained by the following history:

On January 24, 1870, the department issued instructions to collectors that so-called Florentine mosaics composed of slate, intended as ornaments for mantels, panels, etc., should be classified under the tariff act of 1864 as "manufactures of slate." (T.D. 547.)

On March 7, 1873, the department in a letter issued to collectors instructed them that "mosaic pictures made of marble should be classified as manufactures of marble, dutiable at 50 per cent ad valorem, under the provisions of section 8, act of July 14, 1862, and not as paintings." (T.D. 1448.)

On January 25, 1876, the department affirmed the action of the collector in assessing a certain Roman mosaic picture under the provisions for manufactures of slate. (T.D. 2624.)

On January 21, 1891 (T.D. 10620), the Secretary of the Treasury addressed a letter to the Secretary of State, in the following terms, to wit:

Sir: I have the honor to acknowledge the receipt of your letter of the 15th instant, in which you inclose, for the information of this department and appropriate action a copy of a dispatch, No. 116, of the 23d ultimo, from the consul at Florence, containing a report on the manufacture and value of the Florentine mosaics, and recommending that they be placed in the

same category as works of art, paintings, statuary, etc., and import duty levied accordingly.

In reply, I have to inform you that the provision of law imposing duty on works of art specifies the character of such articles, as, for instance, paintings in oil or water colors, and statuary, etc., and that the law contains no provision for mosaics eo nomine.

As mosaics are not specially provided for in the law, they are classified as manufactures of materials of which they are composed, and the department is unable, in the absence of legislation, to authorize the classification of such mosaics as suggested by the consul.

In the Sheldon case (T.D. 16116, G.A. 3080, May 11, 1895), the board held upon the evidence submitted in the case, that under the tariff act of 1894 a certain marble mosaic picture then in controversy should be assessed as a manufacture of marble, as against competing claims for assessment as a manufacture of slate or an article composed of mineral substances.

In the Lee case (T.D. 16301, G.A. 3130, June 18, 1895), the merchandise consisted of certain slabs of white marble set with marble mosaics so as to form a picture of a cross and wreath on each slab. They were assessed with duty as manufactures of marble under the tariff act of 1894, and the board sustained the assessment upon the evidence in the case, overruling a claim for assessment of the articles as works of art "imported for presentation" to an incorporated religious society. The board stated that it had reached its decision in the case "without deciding whether said slabs can be properly classified as 'works of art.'"

In the Hampton case (T.D. 16821, G.A. 3340, January 15, 1896), the board held that certain pictures composed of marble mosaics were dutiable under the tariff act of 1894 as "manufactures of marble," rather than by similitude with "paintings in oil or water colors." The decision, however, was based upon the consideration that even if such a similitude existed it could not prevail over the direct enumeration of manufactures of marble.

Some of the foregoing rulings touch but partially upon the question now before us; nevertheless they disclose that under preceding tariff acts marble mosaic pictures were not regarded as works of art in the same class with paintings in oil or water colors, but were uniformly classified under the provisions for "manufactures" of the materials of which they were composed. We think that Congress did not intend to depart from that rule when enacting paragraph 376, and we therefore conclude that the imported picture does not come within its purview either by direct mention or by assimilation with the articles which are directly mentioned therein.

We may add, however, that this conclusion relates, of course, to mosaic articles like the one now in controversy, and does not necessarily apply to every possible picture into which stone may enter as a component material. [Pp. 526–528.]

In a concurring opinion in the *Petry* case, Judge Smith, speaking for himself and Judge Bland, said:

In my opinion there are mosaics which are not utilitarian in character, which make the same appeal to the emotions as do paintings and which are the conception of artists whose eye for color, form, lights, and shades is that of the painter. Such mosaics, if my memory serves me well, are sometimes known as "mosaic paintings" and if the article involved in this appeal were proven to

be of that kind, I should hesitate to regard it as a manufacture of marble or stone instead of a work of the fine arts.

The mosaics under consideration were returned by the collector as pictures made of pieces of marble and not sculptures or paintings. No evidence was introduced by the importer other than a photograph of the article and testimony to the effect that the importation "had some artistic merit." Whether the mosaic was the production of an artist or of an artisan does not appear from the record and the claim that it is a work of the fine arts is sustained by no evidence other than the photograph and the statement of the examiner that it has "some artistic merit." That a thing has artistic merit does not necessarily make it a work of the fine arts. The creations of the architect, the lace worker, the potter, and the mosaic artisan are not infrequently artistic, but they can not be classed with paintings, sculptures, etchings, or engravings which are the productions of the artist. The evidence does not warrant a finding that the importation is a work of the fine arts and I therefore concur in the conclusion reached. [Pp. 528, 529.]

In the *Frei* case, *supra*, there were three classes of articles, all of which were entered as "works of art and mosaics." The first was a painting on glass designed and executed by an artist of note. This court held it to be an original painting in oil and classified it for duty free entry. No appeal was taken from that part of the decision of the trial court.

The second class of articles consisted of what were characterized as exact copies of well-known works of art, both the originals and the copies having been executed by well-known artists. The third class consisted of original mosaic works designed and executed by artists of note.

It is clear that we are not here concerned with a copy. Hence, it is that part of the *Frei* decision in which our appeals court disposed of the claim for classification of the third class of articles under paragraph 1449 of the Tariff Act of 1922, counterpart both of paragraph 376 of the 1913 act (construed in the *Petry* case) and of paragraph 1547 of the Tariff Act of 1930, for which we cite the *Frei* case.

The court said:

That these importations are works of art in the general acceptance of the terms must be conceded. They embody the artistic conception and artistic execution as well. If it were a matter of first impression, the court might well conclude that they were works of art in every sense, and as such included within that designation as it appears in paragraph 1449. But we feel we are precluded from so doing by an almost uniform administrative practice of long standing and by a line of well-considered authorities.

In *Petry Co.* v. *United States*, 11 Ct. Cust. Appls. 525, this court had before it certain mosaic pictures made of marble, the execution of which is said in the opinion to be "artistic in a marked degree." Presiding Judge Martin, speaking for the court, reviewed the administrative practice of the Treasury Department and the authorities on the subject exhaustively, and came to the conclusion that, in a tariff sense, such mosaics had never been held to be works

of art, but rather manufactures of the various materials of which they were composed.

 *  *  *  *  *  *  *

While it may seem incongruous to hold that things which are in fact works of art are not so in a tariff sense, the apparent reason therefor lies in the manifest intent of Congress to admit at a low rate of duty artistic works representative of the fine arts such as paintings and sculptures, and at the same time to protect the American producers of such articles as belong to the decorative and industrial arts. The idea is fully stated in the opinion in *Lazarus* v. *United States, supra.** 

Paragraph 376 of the tariff act of October 3, 1913, was repeated in substantially the same language in paragraph 1449 of the Tariff Act of 1922. While the opinion in the *Petry* case had not been handed down prior to the passage of the said act of 1922, the Congress must be held to have known of the limitation placed upon the meaning of the statutory term "works of art" by this court and the Supreme Court before that time. Having made no substantial change of language, we must presume the Congress assented to the interpretation. [Pp. 136, 137.]

Judge Smith, who had concurred specially in the *Petry* case, as we noted, *supra*, did not concur with the majority in the *Frei* case. In his dissenting opinion, he said:

The goods imported are mosaics made of bits of colored glass, the product of the glassmaker. The mosaics and the form and color given to them are admittedly the conception and the work of an artist of high order. When completed the mosaics make their appeal to the emotions only and apparently have no utilitarian purpose whatever. They are not the concept or the work of an artisan, but are the offspring of the imagination of the artist and are designed and made up under the exclusive supervision and control of the artist. The glassmaker made and colored the glass. The artisan shaped the pieces of glass and put them in place. The coloring, shaping, and placing of the pieces was, however, controlled, supervised, and wholly determined by the artist and not by the glassmaker or artisan.

The testimony is positive and uncontradicted that the mosaics in issue are the productions or reproductions of a fine art painter and that the process of making them is identically the same as putting specks of color on a piece of canvas with a brush. Indeed, the mosaics are so much the production of the artist painter that they are known and called mosaic paintings.

The importations are works of the free fine arts of which painting in oils, water colors, or pastel, is typical and, as I see it, are works of art as that designation has been repeatedly defined by this court. See *United States* v. *Baumgarten & Co.*, 2 Ct. Cust. Appls. 321, 322, 323, 324; *Stern* v. *United States*, 3 Ct. Cust. Appls. 124, 125, 127, 128; *United States* v. *Godwin's Sons*, 3 Ct. Cust. Appls. 226, 228; *Warren & Wetmore* v. *United States*, 3 Ct. Cust. Appls. 461, 462, 463; *Downing & Co.* v. *United States*, 3 Ct. Cust. Appls. 473; *United States* v. *Olivotti & Co.*, 7 Ct. Cust. Appls. 46, 48, 49; *Reardon* v. *United States*, 11 Ct. Cust. Appls. 233, 236, 237. To be a work of art a thing must be conceived, designed, produced, or reproduced by an artist or under his immediate supervision and control. See *Merritt* v. *Tiffany*, 132 U.S. 167, 170, 171.

The decisions of this court as to what constitutes a work of the fine arts are clearly supported by the article on the fine arts written by Sidney Colvin, LL.D., for the Encyclopaedia Britannica. See Fine arts, Encyclopaedia Britannica,

---

*2 Ct. Cust. Appls. 508.

Vol. X, p. 365. Doctor Colvin unmistakably declares that the painter's craft is not confined to the making of pictures in fresco, oil, distemper, or water color on an opaque surface, but includes *the fitting together of a multitude of solid cubes or cylinders so that their united surface forms a picture to the eye, as in a mosaic.* He defines the art of painting as a shaping or space art, the business of which is to express and arouse emotion by the imitation of all kinds of natural objects, reproducing on a plane surface the relations of their boundary lines, lights and shadows, or colors, or all three of these appearances together. (Encyclopaedia Britannica, Vol. X, p. 365.)

In *Petry Co* v. *United States*, 11 Ct. Cust. Appls. 525, there was no evidence that the mosaic pictures there involved were produced by a painter or artist or that they were anything more than the work of an artisan. I think, therefore, that that case can not be regarded as any authority whatever for the conclusion that mosaics produced or reproduced by a painter and conceived, designed, colored, and formed by him are not works of the fine arts. Indeed, Judge Martin carefully limited his decision to mosaic articles like those submitted to him and expressly stated that the conclusions reached by him did not necessarily apply to *every possible picture into which stone* may enter as a component material. [Pp. 139, 140.]

The third of the significant mosaic cases is the *Columbo* case, *supra*. The *Columbo* mosaic was a copy of a Raphael painting in the Vatican, known as the "Disputa," said in the evidence of record to be "one of the great paintings of the world." The painting was the artistic conception of Raphael. It was not clear that the artist who created the mosaic had expressed his own artistic conception. Indeed, it appears rather that he copied Raphael. The mosaic was "put together" by artists.

The majority opinion states the differences between the mosaic there before the court and those involved in the *Frei* case, *supra*, and the reasons why the majority felt constrained to base their decision on the doctrine of legislative adoption of judicial interpretation.

* * * It is true that in that case (*Frei, supra*) there was not involved the question of whether a representation in mosaic of an oil painting, the latter concededly a work of the free fine arts, was excluded from classification under said paragraph 1449 of the Tariff Act of 1922, but it was there expressly held that original works in mosaic form, executed by artists of note, were excluded from said paragraph 1449. It would be an anomalous situation were we to hold that an original creation in mosaic form by a recognized artist did not fall under the provisions of paragraph 1547(a) of the Tariff Act of 1930, but that, if the same artist produced in mosaic form a representation of an original oil painting executed by a noted artist, such representation would fall under the provisions of said paragraph 1547(a). [Parenthetical explanation added.]

We cannot so hold, for we are clear that Congress could have had no such intention.

Furthermore, paragraph 1547(a) uses the phrase "copies, replicas, or reproductions of any of the same." We think that the word "copies," as used in said paragraph, has a broader meaning than either of the words "replicas" or "reproductions," but nevertheless the word "copy" must be construed according to its common meaning.

Funk & Wagnalls' New Standard Dictionary defines a copy as—

> a reproduction or imitation, as of a writing, printing, drawing, painting, or other work of art, so as to have another or other similar to the original.

Webster's New International Dictionary defines a copy as—

> an imitation, transcript, or reproduction of an original work.

We do not think that the mosaic representation of the painting "La Disputa" can be said to be a copy of the same within any of said dictionary definitions.

In excluding the mosaics involved in the case of *Frei Art Glass Co.* v. *United States, supra,* the court said:

> That these importations are works of art in the general acceptance of the terms must be conceded. They embody the artistic conception and artistic execution as well. If it were a matter of first impression, the court might well conclude that they were works of art in every sense, and as such included within that designation as it appears in paragraph 1449. But we feel we are precluded from so doing by an almost uniform administrative practice of long standing and by a line of well-considered authorities.

Since that decision was rendered, another tariff law has been enacted and Congress had full opportunity, by appropriate legislation, to bring such a work of art as is here involved within the provisions of said paragraph 1547 (a). It did not see fit to do so; therefore the reasons for adhering to the decision in said *Frei Art Glass Co.* case, *supra,* are very compelling, although, if this were a matter of first impression, we might well conclude that the importation here in question is a work of art, included within that designation as it appears in said paragraph 1547 (a). [Pp. 183, 184.]

Judge Smith was no longer on the bench. Judge Garrett dissented in the *Columbo* case in a carefully reasoned opinion.

I feel constrained to dissent in the instant case, notwithstanding the fact that I must recognize the nearness of its approach to the case of *Frei Art Glass Co.* v. *United States,* 15 Ct. Cust. Appls. 132, T.D. 42214, upon the doctrine of which the majority rest their decision. I regard it as being readily distinguishable, upon the proven facts, from the earlier case of *Petry Co.* v. *United States,* 11 Ct. Cust. Appls. 525, T.D. 39666, also cited in the majority opinion.

I think it obvious from reading the majority and specially concurring opinions in the latter case that the evidence in that record was not sufficient to distinguish the mosaic there involved from the mosaics which had been involved in the various Treasury decisions therein cited. Hence it was evidently there felt by the court that the doctrine of legislative adoption of administrative practice should be applied.

That this court there confined its application of that doctrine to that particular case and arrived at the conclusion there reached because of the failure of the proofs to establish that the mosaic involved met the statutory requirements as to works of art for tariff purposes seems clear to me from the concluding paragraph of the majority opinion which is quoted in the opinion of the majority in the instant case.

I feel that the court there had in mind the possibility of importations such as that now before us, and recognized the fact that evidence might be presented, such as has here been presented, which would lead to a conclusion different from that there reached.

It is established here beyond peradventure, by uncontradicted testimony, that the mosaic involved is itself, in truth, a work of art and that it is a faithful mosaic copy of a painting in oil by one of the world's master artists. The pro-

duction of the copy required three years of intensive work under the direction and supervision of a recognized artist. I find it difficult to reconcile myself to the holding that its classification should be governed by an administrative practice, approved by judicial decisions predicated in each instance upon the particular facts shown in the particular case, which began with the classification of mosaics used principally for wall decorations, pavements, mantels, and the like.

Frankly, this seems to me to do violence to the generally known and historic disposition of the Congress relative to the promotion of cultural and esthetic tastes, and the developing of the finer spiritual emotions and impulses.

The testimony in this case relative to the character of this mosaic, and to the genuinely artistic character of the painting, of which I think it should, in the contemplation of the statute, be regarded as a copy, seems to me to be clearer and more definite than was the testimony relative to the somewhat analogous articles involved in the *Frei Art Glass Co.* case, *supra* * * *. [Pp. 185, 186.]

The provisions of paragraph 1547 are clearly more specific than is the provision of the competing paragraph 218 (f), and plaintiff is entitled to the benefit of the lower rate under paragraph 1547 if the Picasso mosaic comes within the provisions of that paragraph. If this were a matter of first impression, we might well conclude that Congress intended to include within the purview of paragraph 1547 such a work of art as this mosaic is. The question is, are we constrained to hold otherwise by the cited line of authorities.

We think not.

This mosaic is not utilitarian in character or for an industrial use. The proofs negative that.

It is well settled that paragraph 1547 is not limited to the enumerated art forms, but is an inclusive provision. *United States* v. *John Wanamaker*, 19 C.C.P.A. (Customs) 229; *F. Lunning, Inc., et al.* v. *United States*, 39 Cust. Ct. 271, C.D. 1941.

We have held that a collage, provided it is shown to be a work of art, and not utilitarian in character or for industrial use, is properly classified under paragraph 1547; but that a collage is not one of the art forms enumerated in the paragraph 1547 rate modification. *Peters* v. *United States*, 41 Cust. Ct. 195, C.D. 2042.

In considering the relatively new modern art form, the collage, there was encountered no prior judicial interpretation of that art form, although there was an established administrative practice that a collage was to be classified as a manufacture of the chief component material. It is urged that the situation as to mosaics is otherwise; that our appeals court has held that no mosaic may be classified, for tariff purposes, as a work of art; that, in the full knowledge of this judicial interpretation, Congress elected to reenact the statutory provision that had been thus construed and, hence, Congress had adopted this judicial interpretation as its legislative intent with respect to all mosaics.

We find no support for the notion that the decided cases hold that no mosaic may be classified as a work of art. To the contrary, one of

the importations in the *Frei* case, *supra*, was held by this court to be entitled to classification as a work of art, and not as an article of glass. That part of the decision of the trial court was not appealed.

Moreover, in assessing the judicial interpretation of which Congress might be deemed to have had knowledge when tariff acts were before it for enactment, it is necessary to note the clear *caveat* in the majority opinion in the *Petry* case, *supra*, and in the concurring opinion of two of the judges, that the rule of the *Petry* case was not intended to be one of general application to all mosaics.

It is the *Petry* case on which defendant appears to rely as the foundation of the theory of legislative adoption of the judicial interpretation for which defendant contends. Yet, on the face of it, our appeals court clearly recognized, in the *Petry* case, and said that the rule therein adopted was not necessarily applicable to all mosaics and that there might be such mosaics as would be entitled to be classified as works of the free fine arts. Assuming, *arguendo*, that Congress adopted the judicial interpretation in the *Petry* case, such interpretation included a precisely stated limitation on the classification of mosaics as articles made of the component material.

Moreover, in the later *Frei* case, the majority of our appeals court stated their interpretation of "the manifest intent of Congress" with respect to mosaics, as an intent "to protect the American producers of such articles as belong to the decorative and industrial arts." *Frei*, *supra*, page 137.

Any legislative adoption of judicial interpretation of the *Frei* case must include this interpretation. Here, the Picasso mosaic before us does not belong to the decorative and industrial arts.

Nor is it necessary for us to question or qualify the basic doctrine of legislative adoption of judicial interpretation. The judicial interpretation adopted by Congress in the Tariff Act of 1930, if there was such adoption, was an interpretation expressly inapplicable to *every* mosaic. Where the mosaic was the artistic conception and execution of the artist, in this case, Pablo Picasso, the judicial interpretation Congress could have known, when the Tariff Act of 1930 was up for enactment, presented the possibility that such a mosaic as this should be classified as a work of the free fine arts. This mosaic is not an article of the decorative and industrial arts. The judicial interpretation known to Congress suggested that such a mosaic as this would not be classified as an article of glass.

Like Judge Smith, speaking in the *Frei* case, *supra*, we think that the *Petry* case cannot be regarded as any authority whatever for the conclusion that mosaics produced by a painter and conceived, designed, colored, and formed by him are not works of the free fine arts. On the record before us, this is such a mosaic. On the records

that were before the court in the prior cases, it was not clear (save perhaps for the mosaic painting in the *Frei* case, classified as such) that the mosaics there involved were conceived, designed, colored, formed, and produced by a painter. Here, the record is clear that this mosaic was conceived, designed, colored, formed, and produced by the painter Pablo Picasso.

On the record before us, we hold that the Picasso mosaic here in litigation is entitled to classification as a work of art under paragraph 1547; that it is not one of the art forms for which rate reduction has been provided; and that plaintiff is entitled to have duty assessed on the final appraised value at the statutory paragraph 1547 rate of 20 per centum.

Judgment will be entered accordingly.