(C.D. 2480)

FUSEK'S v. UNITED STATES

United States Customs Court, Third Division

(Decided September 29, 1964)

*Stein & Shostak* (*Marjorie M. Shostak* and *S. Richard Shostak* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Sheila N. Ziff, James F. O'Hara*, and *Harold L. Grossman*, trial attorneys), for the defendant.

. Before DONLON and RICHARDSON, Judges

DONLON, Judge: These two cases were consolidated for trial at Los Angeles. There is an extensive record, including testimony of six witnesses who were called by plaintiff, and a number of exhibits that were introduced by plaintiff. Defendant introduced no evidence. Both parties have filed briefs.

The merchandise consists of certain wood sculptures and carvings that were imported in 1957 and 1958 from Italy. Plaintiff entered them under paragraph 412, as manufactures of wood, not specially provided for, with duty claimed at 16⅔ percent. (The entries included certain statuary entered as duty free, and so classified in liquidation, as to which there is no issue before us.) Paragraph 412 enumerates a number of tariff specifications for wooden articles, including the specification of manufactures of wood that are not specially provided for. The collector liquidated the merchandise as it was entered, and duty was assessed on that basis.

Thereafter, plaintiff filed these protests, claiming that the imported wooden articles classified under paragraph 412 are works of art, either

dutiable at 10 percent under modified paragraph 1547 or duty free under paragraph 1807.

Neither on trial, nor in its brief, has plaintiff argued its paragraph 1807 claim. That claim is dismissed for failure to prosecute it.

The issue before us, then, is whether the imported wood carvings and sculptures of these entries are such works of art as are enumerated in paragraph 1547, so that they do not fall into the not specially provided for provision of paragraph 412.

Paragraph 1547(a), modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade (T.D. 52373), is, in relevant part, as follows:

(a)   Works of art, not specially provided for:
(2)      Statuary, sculptures, or copies, replicas, or reproductions thereof, valued at not less than $2.50_____ 10% ad val.

The articles in controversy are valued at more than $2.50 each. The value requirement of paragraph 1547(a) is satisfied.

These carvings come from two different studios, both in Italy. Vincenzo Demetz Figlio (for convenience referred to as Demetz), of Ortisei, sold and shipped the articles of protest No. 59/3272, entry 8003. All of the other articles were sold and shipped by Goffredo Moroder & Figli (for convenience referred to as Moroder), also of Ortisei.

Defendant, in its brief (p. 17), concedes that plaintiff's brief (p. 32) accurately states the issue before us, which is whether plaintiff's proofs show that these imported articles are the professional work of an artist, done either by a qualified artist himself or under his supervision and direction. Plaintiff claims that the proofs do establish this, and defendant asserts that they do not. We agree with plaintiff.

Two of plaintiff's witnesses had visited the Moroder and Demetz studios in Ortisei, and they testified as to their experiences there, as to the studio artists, and how they worked, all based on their personal observations of the work done in the studios. One of these visitors, Mr. Paul Phillips, also visited the school where studio artists are educated.

Three of plaintiff's witnesses are California professional artists, or art teachers, or judges of art, and they stated their professional opinion as to the artistic execution and quality of the imported carvings.

The sixth witness, Mrs. Adolph Fusek, plaintiff's wife and for 14 years associated with his business, identified certain of the invoice articles with pictorial representations of those items. Inasmuch as several of the carvings have been sold, they were not available on trial. The court accepts Mrs. Fusek's identification of the imported articles.

Mr. Adolph Fusek, the plaintiff, testified that he is, and since 1949 has been, an importer of sacred art, which he sells for church use. He

goes to Italy, visiting there the studios from which he purchases articles of church art such as the articles of this litigation. He was in Italy in 1954, and again in 1958. On both of these trips he visited Ortisei, near Bolzano, in northern Italy. He spent about 10 days in Ortisei, on each of these visits, and was at both the Demetz and the Moroder studios. They are within walking distance of each other.

In Ortisei, Mr. Fusek met Mr. Herman Moroder, owner and head of the Moroder studio, successor to his father, Goffredo Moroder, under whose name the studio continues to operate. Mr. Fusek also met there the other artists who work with Moroder. He watched them at work in the studio, including work on such articles as those which he imported.

He also met in Ortisei Mr. Franz Anton Demetz, of the Demetz studio, and other artists who were working in that studio. Work there was much the same as at the Moroder studio. At the Demetz studio, the carving is done by or under the supervision of Mr. Demetz; at the Moroder studio, it is done by or under the supervision of Mr. Moroder.

Mr. Fusek explained that there are some symbolic limitations on works of church art, and there are characteristic postures for certain figures; but that the expressions are characteristic of the individual artist.

Mr. Paul Phillips, a professional artist, is a graduate of San Diego Academy of Fine Arts and of Chouinard Art Institute of Los Angeles. Including other college work and night courses, he has had 7 years of specialized art training after secondary school. He has studied abroad, primarily studying cathedrals and ecclesiastical art of the medieval period. His work has been exhibited in the Art Association Galleries, Los Angeles; the San Diego Museum of Fine Arts; and the La Jolla Art Center. His exhibited work was in oils and in stained glass. Since 1951, he has served as adviser to the clergy and as art consultant on church projects. At the time of testifying, he was currently doing art coordination for the convent chapel in the parish of the Assumption of the Blessed Virgin, in Pasadena.

In 1959, he accompanied the Bishop of Oklahoma and two other artists to Europe, on a trip to buy art objects for the seminary of the diocese of Oklahoma and for the episcopal residence. This entailed daily visits with the Bishop to studios, to give him artistic advice as to art objects that were offered for sale. The Bishop bought a great number.

As to his visits to Ortisei, Mr. Phillips stated that he had been familiar with Moroder's work since 1951, when he was serving as consultant to a pastor to whom Mr. Fusek was offering Moroder

works. For 4 years, before he went to Ortisei in 1955, he became more familiar with Moroder's work and saw examples of it.

In Ortisei, he saw the entire process of wood carving, beginning with the sketch the artist made, or a photograph of a similar work he had previously made and which was to be copied. When a commission was received for such a work, one of the artists first went out and cut the log, in a length suitable for the particular work that was then commissioned. Next, he carved the log roughly down to size; and then he continued to carve until the carving was finished. Mr. Phillips saw this done, in the Moroder and Demetz studios.

He also visited, and described, the local school for the training of the studio artists. Starting at age 6, the children study usual academic subjects in the morning. On returning to school at 1 o'clock, after lunch, they spend the entire afternoon studying in the art department. They learn to model in clay, and then to cast. If it is a foot, then they also learn to carve the same foot in wood. This course of study continues all afternoon, until 6 o'clock. All homework for their academic classes, is done at home at night.

Mr. Phillips described these art students as "very, very hard-working young people." Their full-time schoolwork continues for about 8 years, until they are 14.

By then they have sufficient talent to go into the studios as apprentices. There they work 8 hours daily, returning to school at night to study under retired carvers, or the masters of different studies, who also teach evenings. They continue this program for 4 years. Then, at about age 19, they are well qualified and well educated journeymen artists.

In both the Moroder and Demetz studios, the artists work under the supervision of the master artist, who goes around the studio, criticizing and making suggestions to the artists who are working on their individual pieces.

As to identification of articles as the work of a particular artist, in response to a question put to him on cross-examination, Mr. Fusek said that he would not always know which artist did a particular carving, but he added:

* * * A certain design, a certain facial expression we are trying to get that we use the artist that does that face good, who is good at making the faces. That is how we dictate our orders to them. [R. 31.]

As to the master artist's responsibility, Mr. Fusek said that all the imported work "definitely was under his supervision if one of his other artists did the work." (R. 35.)

Mr. Phillips testified to the same effect. (R. 44.)

As to Mr. Moroder and Mr. Demetz, Mr. Phillips regards them as artists, based on his knowledge of their work. He also regards the instant importations as works of art.

To like effect, plaintiff's expert witnesses, Messrs. Owen, Anderson and Souden, characterized these importations as art and as the work of artists.

Mr. Anderson, who judges art contests, made the point that an art judge never is supposed to know who is the artist of a work he is judging. Judgment is based on observation of the work, not on the name or stature of the person who made it. (R. 124.)

Decisions antecedent to *Wm. S. Pitcairn Corp.* v. *United States*, 39 CCPA 15, C.A.D. 458, and *Abercrombie & Fitch Company* v. *United States*, 49 CCPA 129, C.A.D. 808, are not of any great assistance in currently deciding those cases that involve the construction of paragraph 1547(a). Likewise, cases interpreting paragraph 1807 are not helpful in cases arising under paragraph 1547(a).

In the *Pitcairn* case, our appeals court interpreted the considerable coverage of the paragraph 1547(a) enumeration, in the following language:

> * * * it should be noted that in the 1930 Act Congress inserted "valued at not less than $2.50," a limitation which had not been present in the respective acts of 1913 and 1922. That new matter and the higher [duty] rate constitute the only changes from the 1913 tariff law. It seems not inappropriate to suggest at this point that the Congress which passed the 1930 Act evidently felt that there are, at least for tariff purposes, works of art, including statuary and sculptures, which are of low value so far as dollars and cents are concerned. [P. 26.]

In the *Pitcairn* case, the fact that prospective purchasers of figurines made suggestions as to the subject matter to be represented was held not to detract from the artistic quality of the sculptor's work. We are of opinion that the restrictions peculiar to sacred art, as to symbols and posture, for example, and the suggestions as to subject matter for a particular church use, likewise do not detract from the artistic quality of this work.

The impact of the *Pitcairn* decision was recognized in *Ebeling and Reuss Co.* v. *United States*, 40 Cust. Ct. 387, C.D. 2009, from which our appeals court quoted approvingly, in the *Abercrombie & Fitch* case, as follows:

> The effect of the *Pitcairn* case was to overrule earlier cases, including the *Adelaide Ehrich* case and those cited therein, which limited the provision for works of art, in *paragraph 1547* and its predecessors, to works of the free fine arts. Under the *Pitcairn* case, the provisions of *paragraph 1547*, as originally enacted and as amended, have been extended to include articles of common commerce, possessing beauty and not created for utility, *such as* the objects involved herein. [*Ebeling and Reuss Co., supra*, at p. 394; quoted in *Abercrombie & Fitch Company, supra*, at p. 132; emphasis other than in case names added by the appeals court.]

*Abercrombie & Fitch Company* v. *United States, supra*, was decided by a divided court. The articles in litigation there were small

wooden framed wall hangings. The inserts consisted of a flowerlike decorated cardboard background, on which were imposed figures of small birds and natural substances, such as grasses, leaves, stems, branches, etc., arranged and decorated to represent birds, flowers, etc., in a natural setting. These were the work of one who described himself as a miniature artist for 10 years, a member of The Royal Society of Miniature Painters, Sculptors, and Engravers, the purpose of which is to foster miniature painting.

Reviewing the judge-made law that predated *Pitcairn*, the majority of the appeals court said:

> In conclusion, therefore, with respect to the *Pitcairn* case, we state that its analysis of the statutory and case law pertaining to paragraph 1547(a) in the 1930 Act and its predecessors is convincing that the "works of art" provision of *this paragraph* should not be limited to include only works of the free fine arts. We have considered all of the cases cited by the court below and by the Government and are of the opinion that *insofar as paragraph 1547(a) is concerned*, the position of the court below, and the Government in this court, that this paragraph applies only to the works of the free fine arts, to use words from the *Pitcairn* case, "If supported at all, it is supported by mistaken precedents only, and it has been asserted frequently that a mistake of yesterday should not be perpetuated and thus continue to be the law of today and tomorrow." [*Abercrombie & Fitch Company, supra,* at p. 133; emphasis copied.]

The miniatures were held to be the works of a creative artist, *albeit* not one who had had formal art school training. They were found to be articles entitled to paragraph 1547(a) classification.

The situation here is not identical with that either in the *Pitcairn* case or in the *Abercrombie & Fitch* case. These wood carvings, on the record before us, were, in part at least, works executed by the artist himself or, in part, by others in the studios of master artists and under the direction and supervision of the master artist.

As long ago as 1889, the Supreme Court, considering whether 1880 and 1881 importations were works of art, held that the trial court committed reversible error in refusing to instruct the jury that their verdict should be for the defendant if they found the works in question had been made by skilled workmen or mechanics in the employ of the manufacturer, and not *by professional artists or their assistants under the direction of the artists. Merritt* v. *Tiffany,* 132 U.S. 167.

In the *Merritt* case, the Supreme Court said:

> * * * What productions are to be deemed professional productions of a statuary or a sculptor it is difficult to state in general terms, so as to embrace every article of the kind. It is sufficiently accurate, however, for this case, to say that the definition embraces such works of art as are the result of the artist's own creation, or are copies of them, *made under his direction and supervision* * * *. [P. 169, emphasis added.]

To like effect, see *American Colortype Co. et al.* v. *United States,* 9 Ct. Cust. Appls 212, T.D. 38046; *Amedeo G. Paternostro* v. *United*

*States*, 6 Cust. Ct. 291, C.D. 486; *Forest Lawn Memorial-Park* v. *United States*, 29 Cust. Ct. 224, C.D. 1472.

We accept the admonition of the Supreme Court, in the *Merritt* case, as to the pitfalls that lurk in attempts at general definition in precise terms. It is difficult, perhaps impossible, to state in general terms what productions are to be deemed the professional production of an artist. We accept, however, the guidelines which the high Court laid down, in the spirit of the recent decisions construing paragraph 1547(a), and apply those guidelines to the facts of record here.

Defendant's persistent argument that it is necessary to prove, by name, the identity of the individual artist who made each of these carvings, is contrary to the above-quoted rule, stated by the Supreme Court in the *Merritt* case, *supra*. Such proof is not necessary where, as here, the proofs show that the work was, either, that of a known and named artist, or of others working in his studio under his direction and supervision.

Here the proofs before us show that these carvings are the result of the creative designs of an artist, executed either by him or, in his studio and under his direction and supervision, by persons who had had extensive art training and experience.

The protest claim to paragraph 1547(a) classification is sustained, as to the articles described in the consumption entries of these protests as other manufactures of wood, not especially provided for. As to all other claims and all other merchandise, the protests are dismissed.

Judgment will be entered accordingly.